WALLACE *v.* NEAL.

(*Nashville,* December Term, 1949.)

Opinion filed July 15, 1950.

WM. C. COOK, of Dickson, for appellant.

ROY H. BEELER, Attorney General, ROBERT T. KENNER-LY, Assistant Attorney General, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant filed his original bill in the chancery court and prayed for a declaratory judgment "for the construction of certain Sections, 32, 33 and 34, of Chapter 221 of the Public Acts of 1939", the same being a part of the Civil Service Act of Tennessee.

The bill alleges that complainant was a highway patrolman of the State of Tennessee, his employment beginning on April 7, 1939. On November 10, 1942, he obtained a leave of absence and enlisted in the United States Navy and remained in the service until he was honorably discharged on January 6, 1946; he immediately returned to his post as a patrolman and remained

there until April 9, 1949, when he was attempted to be discharged by Sam Neal, Commissioner of Safety, etc. for "pernicious political activity". Contention is made that "the attempted discharge was directly in conflict with the provisions of the Civil Service Law" in that he was not given the required notice of dismissal and that the law was not observed in numerous other respects. The letter of dismissal was as follows:

"Dear Patrolman Wallace:

"Effective at the close of business, Saturday, April 9, you are hereby dismissed from the service of the State Highway Patrol. Please turn in your equipment to Captain J. J. Jackson at Nashville headquarters.

"Yours truly

"Sam Neal"

The bill further recites that at the time complainant received the foregoing letter of dismissal "he had built up fourteen days as vacation to which he was entitled, with pay, under the Civil Service Laws of the State" and that in truth "he was given only three days' notice of his dismissal". It is conceded, however, that on April 9, the attempted date of dismissal, complainant was entitled to pay for nine days in April. "The complainant received a check covering compensation at his regular rate of pay for twenty-three (23) days in the month of April."

The bill refers to an official opinion by the Attorney General of the State in which the Civil Service Act was construed in a case where another patrolman, one Stoopman, had been dismissed, and upon which Commissioner Neal relied as authority for dismissing the complainant, and alleges that said opinion is erroneous and should be so declared by this Court.

The defendant demurred to the bill upon the following grounds:

"The bill shows on its face that the complainant therein has completely ignored the full and adequate administrative remedy provided for his relief by Section 34, Chapter 221 of the Public Acts of 1939 (Annotated Code Section 423.24hh) and having failed to exhaust such administrative remedy he has no standing as a complainant in this Court.

"The bill shows on its face that in full compliance with Section 33, Chapter 221 of the Public Acts of 1939 (Annotated Code 423.24gg) complainant was notified on April 6, 1949 of his dismissal by his appointing authority Sam Neal, Commissioner of the Department of Safety of the State of Tennessee and remained on the State payroll as a State employee until April 23, 1949, a period more than the minimum statutory period of ten (10) days after notice of dismissal.

"The bill shows on its face that this case is beyond the jurisdiction and authority of this Court as a suit brought against 'officers of the State acting by authority of the State, with a view to reach the State, its treasury, funds or property, and all such suits shall be dismissed as to the State or such officers on motion, plea, or demurrer by the law officer of the State or counsel employed by the State.'"

The chancellor sustained each ground of the demurrer and dismissed the bill. Complainant prayed and was granted an appeal to this Court. The four assignments of error singly and collectively challenge the correctness of the chancellor's decree.

The Civil Service Act was designed to establish a State system of personnel administration for the benefit

of State employees based upon "merit principles and scientific methods". In the "Department of Personnel" there is created a Commission of five members who are clothed with almost unlimited authority in the supervision and control of all employees, and, within certain limitations, may suspend and dismiss employees from the service of the State. The right of appeal to the Commission is given every employee from any action of the Director or appointing authority. The Sections of the Act which are invoked by the complainant read as follows:

"Section 32. Be it further enacted, That an appointing authority may suspend without pay a regular employee for disciplinary purposes for such length of time as he considers appropriate not exceeding thirty days in any twelve month period. With the approval of the Director a regular employee may be suspended for a longer period pending the investigation or trial of any charges against him.

"Section 33. Be it further enacted, That an appointing authority may dismiss any regular employee in his division when he considers that the good of the service will be served thereby. No dismissal of a regular employee shall take effect unless at least ten days before the effective date thereof the appointing authority gives notice to such employee and files a written statement with the Director. The employee shall have an opportunity to file with the appointing authority a written statement regarding the proposed dismissal, copy of which shall be filed with the Director. *A regular employee who is dismissed shall have the right to appeal to the Commission* in the manner provided under Section 34 of this Act. If the Director

determines that the statement of reasons for a dismissal given by the appointing authority shows that such dismissal does not reflect discredit on the employee dismissed, the name of such employee shall, if he so requests, be placed on the appropriate reemployment list or lists.

"Section 34. Be it further enacted, That any regular employee who is dismissed or demoted may appeal to the Commission within fifteen days after such action is taken. Upon such appeal, both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard and to present evidence. *At the hearing of such appeals, technical rules of evidence shall not apply.* If the Commission finds that the action complained of was taken by the appointing authority for any political or religious reason, the employee shall be reinstated without loss of pay. In all other cases, the findings and recommendations of the commission shall be submitted 'to and considered by the appointing authority, *who shall make the final decision disposing of the appeal, which decision shall not be reviewable by any court.* If such final decision is in favor of the employee, the appointing authority may reinstate him and approve the payment of any salary or wages lost by him. When any regular employee is dismissed and not reinstated after appeal, the Commission may direct that his name be placed on an appropriate reemployment list, which direction shall be enforced by the Director." .(Emphasis supplied.)

The principal contention of the appellant is that the Chancellor erred in holding that it was his duty to exhaust his remedy under the Civil Service Law; that he was given the right of appeal from the order of dismissal,

and, not having pursued this remedy, he had no standing in a court of equity to relief by a bill for a declaratory decree. In combating the theory of the defendants, which was adopted by the Chancellor, the insistence is made that the act says "he *may* appeal" and not that "he *shall* appeal" from the order of dismissal.

In support of this insistence the argument is made on behalf of the appellant that the chancery court has concurrent jurisdiction with the Civil Service Commission to decide the issue, and hence a bill seeking a declaratory decree is proper.

The sole determinative issue involves the election of remedies, that is, as to whether or not an employee, who claims the rights as well as benefits of the Civil Service Law, may proceed in a forum, other than before the Civil Service Commission, for specific relief.

It must be conceded that our Civil Service Law created a new right, which was unknown to the common law, and prescribed an exclusive remedy for all persons who claimed a civil service status and who were adversely affected by the ruling of any departmental head.

"In the adjudicated cases there are kaleidoscopic applications of the rule that where a statutory remedy is provided, or jurisdiction is exclusively conferred by statute upon a tribunal created by legislation, as to matters coming within the jurisdiction of such tribunal, or within the provision of such statutory remedy, declaratory judgment action as a rule will not lie. However, the contrary has been maintained." Anderson on Declaratory Judgments, page 142.

To the same effect is Borchard on Declaratory Judgments (2nd Ed.), notes on page 342.

In Sutherland on Statutory Construction, Vol. 3 (3rd Ed.), Section 5812, it is said: "A distinction is made in the cases between statutes conferring new rights and those which merely create new remedies. A statute granting a new right is mandatory; and a right which exists only by virtue of statutory grant comes into being only after strict compliance with the statute and all of its conditions. This rule may be more frequently encountered in the form of the proposition that statutes creating new rights are strictly construed. And as a corollary to that same rule, where a statute creates a new right and prescribes the remedy for its enforcement, the remedy prescribed is exclusive. But a statute which creates a new remedy for a right already existing under the common law is generally directory only, and does not preclude the use of existing common law remedies."

The Civil Service Law of this State not only creates new rights but prescribes an exclusive remedy for the protection of such rights. Under Section 33 an "employee who is dismissed shall have the right to appeal to the Commission in the manner provided under Section 34". The Commission is authorized to act summarily, that is, it acts upon the appeal without formality or delay. As relating to procedure on appeal Section 34 provides: "At the hearing of such appeals, technical rules of evidence shall not apply." The final decision disposing of the appeal is not subject to review by any court except to determine if the Commission acted fraudulently, or in excess of its lawful authority.

It is the duty of the Court to so construe the Act that it will serve the purposes for which it was enacted rather than one which would have a contrary result. Considering the number of employees who claim the

benefits of the Act it seems clear that if they are given the right to file a bill for a declaratory judgment complaining of every disciplinary act of the Commission, or of some departmental authority, the Act would be unworkable and unenforceable. The decisions relied on by the appellant of *Reynolds v. U. S.*, 292 U. S. 443, 54 S. Ct. 800, 78 L. Ed. 1353 and other Federal cases involving the right of election of remedies, do not control the case at bar. We are here dealing with rights and remedies under a local law. The fallacy of the argument advanced by able counsel for appellant lies in the erroneous assumption that the remedy under the Civil Service Law is not exclusive, and that he can invoke the jurisdiction of another tribunal.

The first and second assignments of error are overruled, and the decree of the Chancellor is affirmed. Since these assignments are determinative of the real controversy we find it unnecessary to express an opinion upon questions raised in other assignments.

All concur.