59 N.J. Super. 205 (1960)
157 A.2d 567
ROBERT R. TERWILLIGER, TRADING AS KENNGOTT-TERWILLIGER CO., PLAINTIFF,
v.
GRACELAND MEMORIAL PARK ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 15, 1960.
*208 Messrs. Hofstra & Hofstra (Mr. Howard Stern appearing), attorneys for plaintiff.
Messrs. Osborne, Cornish & Scheck (Mr. Harry V. Osborne, Jr., appearing), attorneys for defendants Hollywood Memorial Park, Inc. and Rosedale and Linden Park Company.
Mr. David D. Furman, Attorney General of New Jersey (Mr. Morton I. Greenberg, Deputy Attorney General, appearing), pro se.
SCHERER, J.S.C.
The issues framed by the pretrial order in this case are (a) whether the plaintiff is entitled to enjoin the defendants from pursuing the practices and courses of conduct charged in the complaint, as amended; (b) whether the plaintiff has standing to bring this suit; (c) whether the Attorney General is a necessary party; and (d) whether the plaintiff has suffered any loss to his business because of the conduct of the defendants, which is alleged to be unfair competition.
The bases of this suit are the decisions of the Supreme Court in Frank v. Clover Leaf Park Cemetery Ass'n, 29 N.J. 193 (1959), modifying the judgment of the Chancery Division at 48 N.J. Super. 337 (1957), and of the Appellate Division in Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244 (App. Div. 1957).
At the opening of the trial, a consent judgment for the plaintiff was entered against the defendants, Graceland Memorial Park Association and Graceland Management *209 Corporation, and the trial proceeded against the remaining defendants, Hollywood Memorial Park, Inc. (hereinafter called "Hollywood") and Rosedale and Linden Park Company (hereinafter called "Rosedale"). It was stipulated that the evidence presented would be against Hollywood, but that such evidence applied with equal force to Rosedale, and that whatever judgment was entered in favor of or against Hollywood, based upon such evidence, would be the same judgment to be entered as to Rosedale.
Hollywood is completely a memorial park type cemetery, and Rosedale is partially so. A memorial park cemetery follows a uniform pattern of rolling lawns, where graves are marked by tablets or markers set flush with the turf. No other type marker is permitted. This not only gives uniformity of appearance but assists in the mowing and trimming of the lawns. The overwhelming majority of the markers in Hollywood are made of bronze, but granite is permitted. The bronze markers are affixed to a concrete base, and the marker, subjoined to the base, is then set in an excavation made at the grave site. In most instances, no permanent foundation is installed to which the marker, with its concrete base, is attached.
Plaintiff is a monument dealer who sells both the traditional type monument and the bronze and granite markers for installation in memorial parks. Defendants also sell and install the bronze markers for use in their cemeteries. They do not sell granite markers. Plaintiff complains that the acts of the defendants in selling and installing the bronze markers to lot owners in their cemeteries constitute an unfair competitive practice; that the acts are ultra vires; that the cemetery charges for installation and maintenance are unreasonably high; and that he has suffered, and will continue to suffer, injury to his business as a result thereof. Defendants deny these allegations and say that their acts are entirely proper, and not ultra vires, because they are general business corporations, having been incorporated under Title 14 of the Revised Statutes, rather than cemetery associations *210 incorporated under Title 8 (hereinafter called the "Rural Cemeteries Act"). They also deny that their charges are unreasonable or that plaintiff has suffered any damage.
This appears to be a test case. The evidence discloses that the cost of the litigation is being borne by the state organization of monument dealers. Plaintiff and other monument dealers interpret the decision in the Frank case as requiring that all cemeteries cease any operations not immediately or reasonably connected with the interment of bodies. This would require them to terminate the sale of markers, winter grave covers and similar enterprises. See Frank v. Clover Leaf Park Cemetery Ass'n, supra; Di Cristofaro v. Laurel Grove Memorial Park, supra; and People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co., 3 Ill.2d 592, 122 N.E.2d 283 (Sup. Ct. 1954). These cases hold that cemetery corporations' independent enterprises of selling memorials are ultra vires, as well as contrary to the public interest, and must be discontinued.
Plaintiff testified that he does not own a lot either in Hollywood or Rosedale; that he does solicit lot owners in these cemeteries for sale of memorials; that Hollywood is about two miles from his place of business, and Rosedale is even further away; that he has sold bronze markers for installation in Hollywood beginning in 1952 and through 1959, the greatest number being 20 in 1954 out of total sales of 24 for that year. He admitted that neither defendant has refused to install bronze markers sold by him, nor interfered, or attempted to interfere, with his sales. He buys the bronze markers  which are the real items at issue here (there being few granite markers installed)  from the same dealers who sell to defendants and at the same prices. The resale profit varies from 100% to 150%. The defendants install all markers, whether sold by themselves or others. They have reserved this function to themselves under their regulations. Such a regulation was approved as proper in the Frank case, 29 N.J., at page 207. The defendants make the same charge for installation of markers sold by memorial *211 dealers like the plaintiff as they do for markers sold by them directly to lot owners. In fact, the total charges made by the plaintiff to his customers, which include the cemetery charge for installation, usually exceed by from $10 to $40 the total charges made by the defendants to the lot owners who buy directly from them.
Plaintiff contends that Hollywood's charges for installation and current maintenance are unreasonably high. He said, "I think the customer is paying too much for installation." He admitted, however, that he did not know the cost to the defendants of these services. The present charges have been unchanged since 1955. These charges can hardly be said to affect the plaintiff's business, since they are the same no matter who sells the marker. Furthermore, plaintiff absorbs no part of the charges, but passes them on to his customers in their entirety. There is no evidence here, as was noted in the Di Cristofaro case, 43 N.J. Super., at page 255, that defendants assess excessive charges to dealers for installation to force lot owners to deal with the cemetery, and not with the memorial dealers.
Testimony was given by Charles Frank (the plaintiff in Frank v. Clover Leaf Park Cemetery Ass'n, supra) of a time study he made of the actual cost of the installation of a bronze marker. This was to show that the defendants' charges are unreasonably high. Mr. Frank's installation, made only for the purpose of providing evidence in this case, was under entirely different conditions and circumstances and did not take into consideration many important cost factors. I find his evidence on this score to be unpersuasive.
It is admitted that the defendants have not made any cost accounting time study, and that the charge for installation and current maintenance, which is on a sliding scale depending upon the size and type of marker, is to some extent arbitrary, but plaintiff has not shown that it is unreasonable, nor that he could sell more markers if the charges were reduced. The formula was established in 1955, and *212 the testimony introduced on behalf of the defendants was that the charge was evolved after considering defendants' overhead and other cost factors, and was based upon the charges for installations of this nature generally used in memorial park type cemeteries in this and other areas.
An attempt was made to show that the money received for the current installation charges was not properly spent, and that the markers were not properly maintained after installation, but in my opinion this fell far short of sustaining the burden of proving improper maintenance. But, even if this were true, the cause of action would be one by the lot owner, or by the Attorney General, against the cemetery, and not by the plaintiff. He has no interest in the maintenance of the markers in the cemetery.
The real object of this suit is to stop cemeteries from selling memorials, thus leaving the field clear for the memorial dealers. The latter claim that the defendants use unfair competitive practices, in that they have a list of lot owners whom they can contact in an effort to sell markers, which lists are not available to memorial dealers. The dealers are limited in their sales to seeking to ascertain, by telephone or other means, whether persons own lots in cemeteries and, if they do, to then attempting to sell markers to them, or by making contacts through information available in the obituary notices in the daily papers. The defendants do not endeavor to sell markers to any persons except those lot owners whose lots are paid for. They admittedly do contact these lot owners in an effort to sell them the bronze markers. But, this can hardly be said to be unfair competition when it is considered that 90% of the cemetery lots are sold by the defendants through direct solicitation of persons whom they contact either through telephone calls, direct mailing, or otherwise. Having created the customer potential for markers by their own efforts in the original sale of lots, there would seem to be no reason why  if the sale of the markers is otherwise legal  the defendants should be precluded from soliciting the lot owners for sales. In my *213 opinion, this is not unfair competition. See American Shops, Inc. v. American Fashion Shops of Journal Square, Inc., 13 N.J. Super. 416 (App. Div. 1951).
There is no proof here, as there was in the Frank case, that the cemeteries put pressure on lot owners to deal with them, or that they refused to install markers sold by plaintiff, or that they attempted in any way to block the sale of markers by memorial dealers. In the Frank case, the testimony disclosed that all markers placed on the graves in Clover Leaf Park Cemetery, with one exception (which was accomplished by a trespass), were sold and installed by the cemetery itself. The evidence here is to the contrary. In 1957, out of 420 markers installed, Hollywood sold 305; in 1958, out of a total of 450, Hollywood sold 321; in 1959 (up to August 31), out of a total of 303, Hollywood sold 190. In each of these years, markers sold by the plaintiff were installed in Hollywood. Plaintiff has not proven any present damage by reason of the sales of markers by the defendants, nor has he sustained the burden of proving that defendants' installation and maintenance charges are unreasonably high or that these charges interfere with his business.
But, plaintiff says, the defendants' acts in selling the markers are ultra vires, and they are prohibited from doing so under the cases above cited. In the Frank and Di Cristofaro cases, the cemeteries were incorporated under Title 8 of the Revised Statutes, and in People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co., supra, the cemetery was incorporated under a special Illinois statute. As noted above, these defendants are incorporated under Title 14, and thus, they argue, they are not subject to the restrictive provisions of Title 8, or entitled to the benefits thereof. They admit, however, that they do secure such tax exemptions, as cemeteries, but they claim that this comes about not by virtue of their being cemetery associations, but by virtue of the provisions of certain judgments entered in the former Court of Chancery in Fidelity Union Trust Co. v. Union Cemetery Association, 136 N.J. Eq. 15 (Ch. 1944); and *214 Township of Union v. Union Cemetery Association, Chancery Docket 96/405. The defendant Hollywood purchased its land as a result of proceedings in the first cited case and is securing tax exemption as a result of the second proceeding. Under ordinary circumstances, even if the acts of the defendants are ultra vires, the plaintiff would have no standing to challenge them, since he is not a lot owner, nor has he sustained the burden of proving any damage to him as a result of their acts.
In the Di Cristofaro case, the court said, 43 N.J. Super., at page 252:
"From the narrow perspective of the supposed status of the plaintiffs as suitors in competition with the defendant corporations, alleged to be acting ultra vires, the preferable, and, we think, the predominant view in this State and elsewhere would preclude the bringing of this action. * * *."
And, this case further holds that the fact that an ultra vires act causes unusual competition to one's business does not alone give rise to a right to challenge such act. The court sustained the complaint in that case because the plaintiff alleged that he had been damaged and prohibited from getting business from lot owners as a result of the actions of the defendant.
These facts, too, were alleged and proven in the Frank case, where the court, in upholding the plaintiff's right to bring the action, said, 29 N.J., at page 209:
"* * * he was subjected personally to unfair and wrongful as well as ultra vires competitive practices by the Association, as the result of which he suffered actual and potential damage in his business. * * *."
The same challenge was made to the plaintiff's right to suit in People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co., supra, but this decision is not apposite because the proceeding there was a statutory one brought by quo warranto.
What has been stated above would normally require a dismissal of the complaint. However, the situation here *215 requires different treatment because of the fact that the public interest is involved and other cemeteries are also engaged in the sale of markers. In both Walker, Inc. v. Borough of Stanhope, 23 N.J. 657 (1957), and Frank v. Clover Leaf Park Cemetery Ass'n, supra, the courts appeared to entertain grave doubts as to whether the plaintiff had shown that any private, legal or equitable rights had been violated. But, in each case, because of the public nature of the problems involved, the courts refused to dismiss the complaint. The plaintiff here, as in Walker, Inc. v. Borough of Stanhope, supra, occupies the position of a taxpayer and citizen and, as was said in Hudson-Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of City of Hoboken, 135 N.J.L. 502 (E. & A. 1947), it takes but a slight private interest added to, and harmonizing with, the general public interest to warrant the retaining of a suit and the granting of appropriate relief, where matters of important public policy are involved. See Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952). The matter of public policy here is whether these defendants should be barred from selling markers under the holdings in the Frank and Di Cristofaro cases.
The problem is whether these defendants, who are not cemeteries incorporated under Title 8, but under Title 14, are affected by these decisions, which in each case involved a cemetery incorporated under Title 8. These defendants say that, because of their incorporation as general business corporations, they are not quasi-public charitable trusts. This position finds no support in the authorities. In Parker v. Fidelity Union Trust Company, 2 N.J. Super. 362, 390 (Ch. Div. 1944), it is stated that there are only two types of cemeteries, public and private, a public cemetery being one where there is a public user and, with such user, a cemetery becomes a quasi-public cemetery, irrespective of who holds title or whether maintained by a private corporation. See Davie v. Rochester Cemetery Ass'n, 91 N.H. 494, 23 A.2d 377 (Sup. Ct. 1941), and other cases. In Newark *216 v. Stockton, 44 N.J. Eq. 179 (E. & A. 1888), title to cemetery lands was held by a municipality, but the cemetery was nevertheless held to be a charitable trust. It seems clear from the decided cases that all public cemeteries function as quasi-public charitable trusts. And any plan to circumvent the legislative scheme and public policy with respect to the operation of cemeteries is illegal and should be struck down by the courts. East Ridgelawn Cemetery v. Winne, 11 N.J. 459, 466 (1953).
The reported cases in this State dealing with cemeteries incorporated under the general cemetery laws leave no doubt that the operation of cemeteries is subject to the control of this court as charitable trusts. See Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580 (E. & A. 1932); East Ridgelawn Cemetery Co. v. Frank, 77 N.J. Eq. 36 (Ch. 1910); Attorney-General v. Linden Cemetery Ass'n, 85 N.J. Eq. 501 (E. & A. 1916); Ransom v. Brinkerhoff, 56 N.J. Eq. 149 (Ch. 1897); Bliss v. Linden Cemetery Ass'n., 81 N.J. Eq. 394 (Ch. 1913). The owner of the fee (of dedicated cemetery land) is subject to a trust for the benefit of those entitled to use the land as a place of burial. 10 Am. Jur., Cemeteries, sec. 8, p. 490.
Indeed, it may be questioned as to whether cemetery corporations like the defendants herein have any right to incorporate under the General Corporation Act. This, however, is a matter to be inquired into by the Attorney General. See Di Cristofaro v. Laurel Grove Memorial Park, supra, 43 N.J. Super., at page 250. It seems entirely likely, if not certain, that when all the lots in defendants' cemeteries are sold, or sooner, the stockholders of these corporations will receive a substantial profit on their investments. This would not be permitted in the case of cemeteries incorporated under Title 8. Cemeteries are charitable trusts and must be operated in the public interest, and not for private profit. East Ridgelawn Cemetery v. Winne, supra. However, this question is one to be resolved by the Attorney General, who is charged with the duty of bringing actions against quasi-public *217 charitable trusts for a breach of their fiduciary duties. 4 Scott on Trusts (2d ed. 1956), sec. 391, p. 2760; First Camden Nat. Bank & Trust Co. v. Hiram Lodge No. 81 Free & Accepted Masons, Chestnut Hill, Philadelphia, 134 N.J. Eq. 303, 308 (Ch. 1944), affirmed o.b. 135 N.J. Eq. 505 (E. & A. 1944). And this court has general supervisory jurisdiction over such trusts. Atlas Fence Co. v. West Ridgelawn Cemetery, supra, 110 N.J. Eq., at page 591. It is stated in the Restatement, Trusts, sec. 391, p. 1183, that a suit can be maintained for the enforcement of a charitable trust by the Attorney General, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest. I am of the opinion that the defendants are quasi-public charitable trusts, despite their incorporation under Title 14, and are subject to all the rules applicable thereto.
What has been stated above disposes of any question as to the necessity of joining the Attorney General as a party defendant. He is indispensable. See Frank v. Clover Leaf Park Cemetery Ass'n, supra, 29 N.J., at page 208.
The last problem to be resolved is whether the sale of the markers is an ultra vires act of a cemetery corporation, as a quasi-public charitable trust. The answer to this question appears to be that it is. See Frank v. Clover Leaf Park Cemetery Ass'n, supra, 29 N.J., at page 204; Di Cristofaro v. Laurel Grove Memorial Park, supra, 43 N.J. Super., at page 256; People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co., supra, 122 N.E.2d, at page 287. The basis of these holdings is that a cemetery corporation having a preferred position, both as to taxation and otherwise, should not compete with, and make a profit at the expense of, commercial enterprises not so favored. As noted above, cemeteries are charitable trusts and must be operated in the public interest, and not for private profit. East Ridgelawn Cemetery v. Winne, supra. While it is argued that the defendants sell markers as a service, and *218 not primarily for profit, the evidence convinces me that they are sold for profit reasons and do yield a profit.
Finding, as I do, that it makes no difference that the defendants are incorporated under Title 14, rather than Title 8, so far as their rights, privileges and obligations are concerned, it follows logically that under the decisions of the above cited cases they are prohibited from selling markers in competition with commercial dealers. While the defendants insist that their certificates of incorporation give them this power  as distinguished from the charters of the corporations in the above cited cases  this is a power not necessary to what should be the single purpose of the defendants, i.e., the conducting of a cemetery for burial purposes. They may not arrogate to themselves powers not otherwise permitted by incorporating themselves under the General Corporation Act, rather than under the Cemetery Act. See East Ridgelawn Cemetery v. Winne, supra, 11 N.J., at page 466.
A judgment will therefore be entered adjudging (a) that the plaintiff has shown no present private, legal or equitable injury to himself in the sale of memorials by the defendant cemeteries, but that such sales, in limiting the market available to him as a memorial dealer, cause him potential injury; (b) that plaintiff, under the circumstances shown in this case, has the right and legal standing to bring this suit; (c) that the defendants are quasi-public charitable trusts, despite their incorporation under Title 14, rather than Title 8, and have all of the rights, obligations and limitations of cemeteries incorporated under Title 8; (d) that the sale of cemetery markers by the defendants is ultra vires under the decided cases and will be enjoined; (e) that plaintiff has not sustained the burden of proving that defendants' charges for installation of markers and current maintenance are excessive, unreasonable or discriminatory; and (f) that the Attorney General is a necessary party to these proceedings. No costs will be allowed to any party. A judgment may be presented in accordance with these conclusions.