K & L DISTRIBUTORS, INC., a Washington corporation, et al., Appellants,

v.

Frank H. MURKOWSKI, Commissioner of Economic Development, et al., Appellees.

No. 1322.

Supreme Court of Alaska.

June 18, 1971.

Robert J. Annis, Juneau, for appellants.

G. Kent Edwards, Atty. Gen., Juneau, Charles K. Cranston, Asst. Atty. Gen., Edgar Paul Boyko, Anchorage, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR, and ERWIN, JJ.

## OPINION

ERWIN, Justice.

On April 24, 1969, a hearing was held before the Commissioner of Economic Development, Frank Murkowski, on the application of Dr. August Oetker Co., a/k/a Oetker Brewing Co., for an industrial incentive tax credit under the provisions of AS 43.26.010. At the hearing testimony was taken in support of and in opposition to the application of Oetker Brewing Co. Based on the testimony presented at the hearing, Commissioner Murkowski concluded that sufficient evidence had been presented to justify the granting of a tax credit and that Oetker Brewing Co. constituted a business eligible for the granting of a tax credit.

On July 2, 1969, the Commissioner of Economic Development signed and issued a certificate of industrial tax exemption granting Oetker Brewing Co. a tax credit equal to 75% of the value of the investment which Oetker would make in its brewery as of the date the brewery commenced operation. The credit was to be in existence for a period of seven years except that if Oetker Brewing Co. engaged in certain agriculture research, the credit would be extended for a period of ten years. The credit granted was to be applied against Oetker's tax liability under the Malt Beverage Excise Tax set forth in AS 43.60.010.

The certificate specifically found that Oetker Brewing Co. was an " 'eligible business', manufacturing a product defined in AS 43.26.100(2) (A)" and thus was entitled to the tax credit.

On September 3, 1969, the appellants, wholesale distributors of malt liquor in

Alaska, filed a complaint seeking judicial review of the Commissioner's grant of the tax credit. Subsequently, the superior court granted summary judgment in favor of the State of Alaska, upholding the grant of the industrial incentive. Appellants have appealed to this court.

Appellants raise three contentions on appeal with regard to the decision of the superior court: (1) that the Alaska Industrial Incentive Act does not permit the granting of an exemption from excise taxes; (2) that the Commissioner of Economic Development did not make the proper findings of fact and conclusions of law; and (3) that in any event the application of an industrial credit to the malt liquor excise tax is unconstitutional, in violation of both the Commerce Clause of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

The appellees have raised preliminary procedural questions concerning both the standing of appellants and the reviewability of the Commissioner's determination. They must be treated first.

■ Traditional doctrine would deny appellants standing based solely on their competitive position.[1] However, this view has been criticized as overly restrictive[2] and has been rejected in a number of judicial decisions.[3] The need for review in certain cases may make it desirable to allow standing to one whose primary interest is not in the direct outcome of the administrative action, but in its competitive effect on his economic interest. The need to balance various factors in determining standing is explained by Professor Jaffe:[4]

But standing, as is true of the other criteria, should not be conceived as furnishing a clear-cut test of jurisdiction. In cases where the authority of *Frothingham v. Mellon* does not exclude jurisdiction, the attenuated character of the particular impact on the plaintiff should be relevant but not conclusive against jurisdiction. In such a case the standing criterion should be assessed together with the other criteria of jurisdiction. Particularly relevant to the exercise of jurisdiction is the presence of a clear-cut issue apt for judicial determination—an issue for the resolution of which the authoritative legal norms can provide an adequate rule. Such a case is, in my opinion, one in which under our system

---

1. See, *e. g.*, Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938). *Cf.* Office of Communication of United Church of Christ v. FCC, 123 U.S.App.D.C. 328, 359 F.2d 994 (1966). Appellants did not allege in their complaint that they were taxpayers. For cases holding taxpayers have standing, see Jefferson v. Asplund, 458 P.2d 995, 1002 (Alaska 1969); Greater Anchorage Area Borough v. Porter & Jefferson, 469 P.2d 360 (Alaska 1970).

2. Jaffe, Standing to Secure Judicial Review: Private Actions, 75 Harv.L.Rev. 255 (1961); Jaffe, Standing Again, 84 Harv.L.Rev. 633 (1971); Note, Competitors' Standing to Challenge Administrative Action Under the APA, 104 U.Pa L.Rev. 843 (1956); 3 Davis, Administrative Law Treatise, § 22.11 at 254, § 22.18 at 291 (1958).

3. See, *e. g.* Grillo v. Bd. of Realtors of Plainfield Area, 91 N.J.Super. 202, 219 A.2d 635 (1966); Terwilliger v. Graceland Memorial Park, 59 N.J.Super. 205, 157 A.2d 567 (1960); Hudson Bergen County Retail Liquor Stores Ass'n v. Bd. of Com'rs, 135 N.J.L. 502, 52 A.2d 668 (1947). The New Jersey cases strongly argue that the combination of general public interest and the status of a competitor should be treated as providing adequate standing. Two 1970 United States Supreme Court cases suggest that the federal law of standing of competitors may be evolving to a similar orientation. Ass'n of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

4. Jaffe, Standing to Secure Judicial Review: Private Actions, 75 Harv.L.Rev. 255, 304–05 (1961).

of expectations, judicial intervention is warranted. Neither the competences of the judicial power nor its dangers can be strictly related to a standing requirement. The lack of conventional standing may, indeed, signal the absence of a desirable maturity or of an issue capable of effective judicial resolution. (footnotes omitted.)

In this case the question of the ability of the state to grant an industrial incentive tax credit is of substantial importance, and this is the first serious challenge to an application of the statute. It is undisputed that the immediate future holds many potentially similar problems with respect to Alaska's economic development. No one has a greater interest in the outcome of the request for exemption than appellants, and if they cannot raise the issue, it is unlikely that the issue will be raised.[5]

After weighing the various factors in this case, we hold that appellants have the necessary standing to bring this suit.[6]

A more difficult problem is raised regarding the reviewability of a decision of the Commissioner of Economic Development. AS 43.26.040(e) provides that:

All decisions and findings of the department under this chapter are final and no judicial or administrative appeal or other proceeding lies against them unless otherwise specifically provided in this chapter or by regulation.

The issue of reviewability is whether this court has inherent power to review actions of an administrative agency in the face of such a statute.

One might suppose that this question would be answerable on the basis of clear legal authority. However, Professor Davis points out that the Supreme Court of the United States has managed to consistently avoid deciding the issue of the extent to which the Constitution may require reviewability.[7]

The law of review of administrative action in state courts is not greatly different from that of the federal courts except that state courts appear to give greater weight to the literal terms of statutory provisions cutting off review.[8]

Legal scholars are divided on the issue of judicial reviewability of arbitrary administrative action where a statute precludes review. Professor Davis takes the view that there is no constitutional right to review arbitrary administrative action where the legislature has limited review, while Professor Berger takes a contrary position. The controversy has raged unabated for the last 10 years.[9] Both Profes-

---

5. The granting of an excise tax exemption here would appear to be of significant economic interest only to the appellant wholesale distributors of malt liquor and the State of Alaska. The state has joined Oetker Brewing Co. in urging that the decision of the Commissioner of Economic Development be upheld, and the state legislature has joined the executive branch in this position. See 1969 Senate Resolution No. 6.

6. We find totally unconvincing appellees' argument that appellants lack standing because they lack privity of contract, AS 43.26.020 providing that a grant of tax credit "shall be considered a contract."

7. 4 Davis, Administrative Law Treatise, § 28.18 at 93–94 (1958).

8. Goodwin v. Superior Court, 68 Ariz. 108, 201 P.2d 124 (1948); State ex rel. Indiana Alcoholic Beverage Comm'n v. Superior Court, 229 Ind. 483, 99 N.E. 2d 247 (1951); McCarthy v. Leaman, 324 Mich. 293, 36 N.W.2d 923 (1949); Leeman v. Vocelka, 149 Neb. 702, 32 N. W.2d 274 (1948); In re Petition of Bell, 396 Pa. 592, 152 A.2d 731 (1959); Kaufman Constr. Co. v. Holcomb, 357 Pa. 514, 55 A.2d 534 (1947); Wallace v. Neal, 191 Tenn. 240, 232 S.W.2d 49 (1950); Texas Hwy. Comm'n v. El Paso Bldg. & Constr. Trades Council, 149 Tex. 457, 234 S.W.2d 857 (1950).

9. Berger, Administrative Arbitrariness And Judicial Review, 65 Colum.L.Rev. 55 (1965); 4 Davis, Administrative Law Treatise, § 28.16 (Supp.1965); Berger, Administrative Arbitrariness—A Reply to Professor Davis, 114 U.Pa.L.Rev. 783 (1966); Davis, Administrative Arbitrariness—A Final Word, 114 U.Pa.L.Rev. 814 (1966); Berger, Administrative Ar-

sor Davis and Professor Berger concede that judicial review of administrative decisions is available for the purpose of determining the constitutionality of the statutes under which the administrative agency acts, and to review whether the administrative agency conformed to the standards of procedural due process.

Professor Berger's conclusion basically is that the general rule has been and remains that while courts will not interfere with the sound exercise of discretion, they will review administrative action to ascertain whether it has a rational basis and is reasonable, or whether it is arbitrary.[10] This view has recently been given support by the United States Supreme Court in Oestereich v. Selective Service System Local Board No. 11,[11] where the Court, in the face of a draft statute specifically prohibiting early review, overruled the local board's reclassification of a registrant from a deferred to a draft eligible after the registrant had turned in his draft card as an expression of his opposition to the Vietnam War. The Court decided that it had the power to review the action of the local draft board:

> We deal with conduct of a local Board that is basically lawless. It is no different in constitutional implications from a case where induction of an ordained minister or other clearly exempt person is ordered (a) to retaliate against the person because of his political views or (b) to bear down on him for his religious views or his racial attitudes or (c) to get him out of town so that the amorous interests of a Board member might be better served. (Citation omitted.) In such instances, as in the present one,

there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. * * * (393 U.S. 237–238, 89 S.Ct. 416, 21 L.Ed.2d 402, 406)

There are a substantial number of cases which allow limited review in the face of statutory language precluding review. The universal Military Training and Service Act provides the decisions of the local board are "final".[12] Judicial interpretation of "final" has made it less than "final". When a local board acts in disregard of the law or without evidence to support its findings, it acts outside its jurisdiction. Estep v. United States, 327 U.S. 114, 66 S. Ct. 423, 90 L.Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

In deportation cases, a finality clause [13] did not bar review of fair procedure, statutory interpretation, and evidence to support the findings. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939); Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953). In United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), the Court allowed judicial review of the question whether the Board of Im-

---

bitrariness—A Rejoinder to Professor Davis' "Final Word", 114 U.Pa.L.Rev. 816 (1966); Davis, Administrative Arbitrariness—A Post Script, 114 U.Pa.L. Rev. 823 (1966); Berger, Administrative Arbitrariness: A Sequel, 51 Minn.L.Rev. 601 (1967); Davis, Administrative Arbitrariness Is Not Always Reviewable, 51 Minn.L.Rev. 643 (1967); Berger, Administrative Arbitrariness: A Synthesis, 78 Yale L.J. 965 (1969).

10. *See* Berger, Administrative Arbitrariness: A Synthesis, 78 Yale L.J. 965, 999 (1969).

11. 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed. 2d 402 (1968).

12. 50 U.S.C.A. Appendix § 460(b) (3).

13. 8 U.S.C.A. § 155(a) (repealed Public Law 414 (1952), 66 Stat. 277).

migration Appeals "applied * * * correct legal standards."

In spite of the language of the Second Renegotiation Act [14] that a determination "shall not be reviewed or redetermined by any court or agency," Blanchard Mach. Co. v. R. F. C. Price Adjustment Board, 85 U.S.App.D.C. 361, 177 F.2d 727 (1949), cert. denied 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338 (1950), allowed limited review of jurisdictional questions. In United States v. California Eastern Line, 348 U.S. 351, 75 S.Ct. 419, 99 L.Ed. 383 (1955), the Supreme Court held that the question of whether a contract was renegotiable was reviewable.

In Hospoder v. United States, 209 F.2d 427, 429 (3rd Cir. 1953), the court was faced with a mandamus proceeding brought to require the Veteran's Administration to give the plaintiff a rehearing on his disability claim in spite of the statutory language which then provided that the decisions of the administrator of Veteran's Affairs "shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise." [15] Nevertheless, the court held that "in a proper case under Section 11A–2 [now § 211(a)] mandamus will lie even though the district court may not review the Administrator's factual or legal determinations."

These cases reveal that the most striking feature of the law of reviewability is the unreliability of reliance on the literal words of a statute, no matter how clear and unequivocal. The explanation of the reason why courts do review these matters is very aptly set forth by Professor Jaffe: [16]

[T]he availability of judicial review is, in our system and under our tradition, the necessary premise of legal validity. It is no doubt logically possible for the immediate possessor of power to keep within imposed limits. For the most part he does so, and may indeed be very eager to do so; and furthermore, in the vast heirarchy of a modern administration, there is always the possibility of appeal to and rectification by a higher level within the heirarchy. Yet there is in our society a profound, tradition-taught reliance on the courts as the ultimate guardian and assurance of the limits set upon executive power by the constitutions and legislatures.

As Mr. Justice Brandeis said in his concurring opinion in St. Joseph Stock Yards Co. v. United States: [17]

The supremacy of law demands that there shall be an opportunity to have some court decide whether an erroneous rule of law was applied and whether the proceedings in which facts were adjudicated was conducted regularly. To that extent, the person asserting the right, whatever its source, should be entitled to the independent judgment of a court on the ultimate question of constitutionality.

The only common denominator appearing from these cases, and the writings of various legal scholars, appears to be a broad principle, rather loosely applied, that finality language will be whittled down to size to fit the court's sense of fundamental fairness. The courts have rationalized such fair play in terms of jurisdiction, statutory construction, due process, or some other legal concept, while they actually consider the circumstances of the case and the interplay of policy, statute and regulation. The courts then give content to the subjective element of fairness by weighing the presence or absence of the constitutional safeguards, the reasonableness of the regulatory scheme, the effectiveness of administrative relief, the adequacy of administrative check on initial action, and the comparative qualifications of the court on the one hand and the adminis-

14. 50 U.S.C.A. Appendix § 1191(a).

15. 38 U.S.C.A. § 211(a) (1971 Supp.).

16. Jaffe, The Right of Judicial Review, 71 Harv.L.Rev. 401, 403 (1958).

17. 298 U.S. 38, 84, 56 S.Ct. 720, 740, 80 L.Ed. 1033, 1058 (1936).

trative tribunal on the other hand to decide the particular question at issue.

While there are no Alaska cases concerning judicial review in the face of a statute denying review of an administrative action, this court has indicated strong policy reasons that favor judicial review. In the case of Alyeska Ski Corp. v. Holdsworth, 426 P.2d 1006, 1012 (Alaska 1967), this court in commenting on judicial review of administrative action in a case where the pertinent statute did not manifest a clear intent that a judicial appeal was intended, held that there was a basic right of judicial review to insure compliance with the laws of Alaska:

> Admittedly, this is a penumbral area of law, yet it is one in which our courts are not precluded from carrying out their historic role in development of the common law. In light of the constitutional, statutory, and regulatory provisions alluded to, we conclude that it was not intended that Alaska's courts be divested of their constitutionally vested duty to insure compliance with the laws of Alaska. We therefore hold that the administrative determinations in question are judicially reviewable, and that the provisions of the Administrative Procedure Act relating to judicial review and scope of review should govern this proceeding. Our holding makes unnecessary resolution of the question of whether the decisions involved herein are judicially reviewable under the provisions of Rule 21(a) and (b) of the District Court Civil Rules (footnotes omitted).

█ It is the constitutionally vested duty of this court to assure that administrative action complies with the laws of Alaska. We would not be able to carry out this duty to protect the citizens of this state in the exercise of their rights if we were unable to review the actions of administrative agencies simply because the legislature chose to exempt their decisions from judicial review. The legislative statement of finality is one which we will honor to the extent that it accords with constitutional guarantees.[18] But if the administrative action is questioned as violating, for example, the due process clause, we will not hesitate to review the propriety of the action to the extent that constitutional standards may require.

We recognize the reluctance of other courts to declare any legislative enactment unconstitutional, and concur in that sentiment which seeks to avoid conflicts between the branches of government. However, we cannot see how either desire is advanced by giving apparent credence to a provision purporting to remove the power to review, while in practice finding some method to review the action taken. We simply decline to pursue the method adopted by other courts in favor of a definitive statement of our constitutional obligation.

█ The scope of review of an administrative decision to assure compliance with due process under Alaska law is more limited than the broad form of review required under the Alaska Administrative Procedure Act.[19] The safeguard which due process assures is not that a court may examine each factual finding to see that it is correct, or even that it is supported by substantial evidence. Rather, we will review to assure that the trier of fact was an impartial tribunal, that no findings were made except on due notice and opportunity to be heard, that the procedure at the hearing was consistent with a fair trial, and that the hearing was conducted in such a way that there is an opportunity for a court to ascertain whether the applicable rules of law and procedure were observed.

18. "No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed." Alaska Const. Art. I, § 7.

19. See Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12 (Alaska 1969).; Findley, Note on Pan American Petroleum Corp., et al. v. Shell Oil Co., et al., 9 Alaska L.J. 66 (1971); Aleutian Homes v. Fischer, 418 P.2d 769 (Alaska 1966).

The review of factual determinations becomes a review to find whether the administrative decision has passed beyond the lowest limit of the permitted zone of reasonableness to become capricious, arbitrary or confiscatory.[20]

After reviewing the record in the case at bar, we reach the conclusion that the decision of the Commissioner of Economic Development complied with due process of law and is within the zone of reasonableness based on the evidence presented at hearings on the application of Oetker Company for an Industrial Tax Exemption. There is no indication in the record, nor have appellants pointed out any indication, of procedural unfairness in the process of reaching the decision.

Appellants contend that AS 43.26.-010(a) of the Industrial Incentive Act does not authorize the forgiveness of excise taxes. In support of this contention, it is asserted that where an excise tax is not specifically exempted by the terms of the statute, the doctrine of strict construction in regard to tax exemptions precludes finding excise taxes within the ambit of the statute authorizing forgiveness of taxes.

AS 43.26.010(a) provides specifically as follows:

A person who has established and owns or proposes to establish and own an eligible business is entitled to a tax credit not to exceed 50 per cent of the value of the investment made in the business as of the date it commenced operation. The grant of tax credit shall be effective for a period, established by the commissioner of economic development, not to exceed 10 years from the date of grant and shall be applied against the amount of certain taxes, as determined by the department, due the state during that period as a result of the development, organization, construction, establishment and operation of the specific business for which the credit is granted. The unused portion of a tax credit authorized under this chapter shall be forfeited at the expiration of the period of credit for which the grant was made. Only one grant of tax credit shall be made for an eligible business, irrespective of transfer of the business or other circumstances. If a tax for which credit is given under this chapter produces revenue shared with local political subdivisions, the state shall pay to any affected subdivision the amount of revenue it would receive had the tax credit not been given.

It is apparent from a reading of this section that the grant of tax credit is in the broadest possible form and that the legislature intended the Department of Economic Development to make a grant with regard to almost any tax within the State of Alaska. The last sentence specifically recognized that this might decrease local government shared revenue, and therefore provides for payment in lieu thereof. Since a reading of the statute does not comport with the strict interpretation suggested by appellants, we hold that the Commissioner of Economic Development was justified in determining that the statute covered the malt liquor excise tax.

Appellants next claim that the granting of the industrial exemption in this case denies them equal protection of the laws under the Fourteenth Amendment of the United States Constitution, or in the alternative that it is an unconstitutional burden on interstate commerce under Article I, Section VIII, of the United States Constitution.

While all states are subject to the requirements of the Commerce Clause and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, these clauses impose no iron rule of equality prohibiting the flexibility and variety that are appropriate to reason-

**20.** *Cf.* St. Joseph Stockyards Co. v. United States, 298 U.S. 38, 51–52, 56 S.Ct. 720, 80 L.Ed. 1033, 1041 (1936); *see also* Brandeis, J., concurring, at 73, 56 S.Ct. at 735, 80 L.Ed. at 1052.

able schemes of state taxation.[21] The state may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. A state is not required to resort to close distinctions or to maintain a precise scientific uniformity with composition, use or value.[22]

There is a point beyond which the state cannot go without violating the Equal Protection Clause or the Commerce Clause. The state must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground or difference having a fair and substantial relation to the object of the legislation." [23]

█ If the selection or classification is neither capricious nor arbitrary, but rests upon some reasonable consideration of difference or policy with a primary purpose other than an attempt to tax interstate activity with the effect of defeating federal constitutional rights, there is no denial of equal protection of the law or unconstitutional interference with interstate commerce,[24] even though there is an incidental effect on interstate commerce.

█ No formula has yet been devised by which it can be determined in all cases whether or not such a tax is valid. The question is inherently a practical one depending for its decision on the special facts of each case and the purpose of the statute itself.

It has repeatedly been held in other jurisdictions that a statute which secures the location within the state of immediate and useful industries by exempting them, though no others, from its taxes is not arbitrary and does not violate the Equal Protection Clause of the Fourteenth Amendment,[25] or the Commerce Clause.[26]

This court has previously held that the encouraging and the assisting of the development of new businesses and industry in Alaska and the rehabilitating and expanding of existing business are legitimate legislative purposes.[27] Therefore, since there appears to be a valid legislative purpose served by AS 43.26.010 and its effect on interstate commerce is incidental only, there is no violation of the United States Constitution by its application in the case at bar.

█ As a final contention herein, appellants allege that the Commissioner of Economic Development did not make proper findings of fact and the case should be remanded for the purpose of complying

21. Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

22. *Id.* at 485. Bell's Gap R. R. Co. v. Pennsylvania, 134 U.S. 232, 237, 10 S.Ct. 533, 33 L.Ed. 892, 895 (1890); State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248, 1255 (1931); Ohio Oil Co. v. Conway, 281 U.S. 146, 159, 50 S.Ct. 310, 74 L.Ed. 775, 781 (1930).

23. *See* Ohio Oil Co. v. Conway, 281 U.S. 146, 160, 50 S.Ct. 310, 314, 74 L.Ed. 775, 782 (1930); Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480, 485 (1959).

24. Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480, 485 (1959).; State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248, 1255–1256 (1931); Hump Hairpin Mfg. Co.

v. Emmerson, 258 U.S. 290, 294, 42 S.Ct. 305, 66 L.Ed. 622, 625 (1922); Brown-Forman Co. v. Kentucky, 217 U.S. 563, 573, 30 S.Ct. 578, 54 L.Ed. 883, 887 (1910).

25. Bell's Gap R. R. Co. v. Pennsylvania, 134 U.S. 232, 237, 10 S.Ct. 533, 33 L.Ed. 892, 895 (1890); Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1930).

26. Hump Hairpin Mfg. Co. v. Emmerson, 258 U.S. 290, 294, 42 S.Ct. 305, 66 L.Ed. 622, 625 (1922). It is clear that both intrastate and interstate business not eligible for tax incentive would be treated equally in this case.

27. DeArmond v. Alaska State Dev. Corp., 376 P.2d 717 (Alaska 1962); *see also* Suber v. Alaska State Bond Committee, 414 P.2d 545 (Alaska 1966) and Walker v. Alaska State Mortgage Ass'n, 416 P.2d 245 (Alaska 1966).

**360**

therewith. The certificate of Industrial Tax Exemption states, in part, as follows:

[T]he Commissioner of Economic Development, for the State of Alaska, has determined that the brewery and related facilities proposed to be built in the Anchorage, Alaska, area by Oetker Brewing Company, hereinafter referred to as applicant, is an 'eligible business', manufacturing a product as defined in AS 43.26.100(2) (A) * * *

The Commissioner, in referring to the term "eligible business" and in referring to the product defined in AS 43.26.100(2) (A), in effect made findings of fact.

Under AS 43.26.010(a), only an eligible business may receive a tax credit. AS 43.-26.100 clearly defines the various categories of eligible businesses. The category business into which Oetker falls was that defined in AS 43.26.100(2) (A). By referring to that section, the Commissioner found:

1. That Oetker was an industrial unit. AS 43.26.100(3) defines 'industrial unit.' Such a unit is defined as one having the capacity to perform the functions involved in the manufacture of its product.

2. That Oetker intended to produce a manufactured product. AS 43.26.100(6) defines a 'manufactured product.' In determining that Oetker was going to produce a manufactured product, the Commissioner found that Oetker would transform a product from raw material or into an article of commerce. He also found that it was a product with respect to which substantial industrial operations are undertaken in the state.

Thus, no matter what the precise meaning of the term "report" as set forth in AS 43.26.040(b), requiring a report from the Commissioner, it is clear from a reading of the certificate that the basis for the decision is readily ascertainable for the purposes of review of the action by this court.

The decision of the superior court is affirmed.