STATE *ex rel.* BRYAN JONES v. CITY OF NASHVILLE *et al.*

(*Nashville,* December Term, 1954.)

Opinion filed May 6, 1955.

E. C. YOKLEY, of Nashville, for appellant.

RAYMOND H. LEATHERS and CORNELIUS SUMMERS, both of Nashville, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This case comes to us on a petition for writ of error from a decree rendered against the appellant Jones by the Chancellor approximately a year before the petition was filed here. In the case in the Chancery Court the Chancellor dismissed the appellant's petition for a writ of mandamus because the appellant had not exhausted his administrative remedies before applying to the court for such a writ.

The writ sought to have the relator (appellant) put back in his former position with the City as Auditor of Purchases with a civil service status, and that his name be placed upon the payroll dating back to the time of his lay-off on August 1, 1951.

The relator was appointed to the position of Auditor of Purchases on January 16, 1949, in accordance with the City ordinances. Thereafter by act of the Legislature the relator was placed in the classified service of the City of

Nashville and official recommendation thereof was given by the Civil Service Commission as is shown by their minutes of January 26, 1950. As a result of this action on the part of the Commission, the relator obtained the permanent status as the Auditor of Purchases in the finance department of the City. By letter of July 19, 1951, addressed to the relator and written by the Director of Personnel of the City, notice was given the relator that his, the relator's appointing authority had submitted to the Civil Service Commission designations of classifications to be laid off, effective on August 1, 1951, and that according to seniority the relator came within such classification and was subject to the lay-off. This is how the relator was laid off and it is from this lay-off on August 1, 1951, that he seeks to be replaced in his position of Auditor of Purchases and have his back salary paid to him.

The City Charter of the City of Nashville authorizes the Civil Service Commission to adopt rules for the administration of Civil Service and Pensions. The provision relating to this in the Charter is Section 205 thereof and among other things contains the following pertinent language:

"Among other things, such rules shall provide for the method of administering the classification plan and pay plan; the establishment, maintenance, consolidation and cancellation of lists; the application of service ratings; the hours of work; attendance regulation, and leaves of absence for employees in the classified section; and the order and manner in which lay-offs shall be effected. Rules so adopted shall have the full force and effect of law."

It was under this authority and other authority vested

in the Civil Service Commission that it adopted certain rules on July 16, 1951, Section 11 of which is as follows:

"(11) All employees of the classified service of the City of Nashville who are laid off will have the right within thirty (30) days after receiving their notice of said lay-off to appeal to the Civil Service Commission and have their case reviewed by said Commission, if they think that they have been discriminated against, or that they can show that the above rules or future rules the Commission may adopt have been violated. Furthermore, the Civil Service Commission reserves the right unto itself to add to, or take away from, these above rules, and reserves the right to revise or amend any part or all of these above rules at any time the said Commission desires, as required by law."

 Under a comparatively recent holding of this Court we held that administrative remedies must be exhausted by those under the Civil Service before a resort may be had to the courts. *Wallace* v. *Neal,* 191 Tenn. 240, 232 S. W. (2d) 49. The reason for so holding is well stated in the opinion. But briefly it might be said that the courts generally in holding to such a doctrine take into consideration the incompleteness of the administrative process and its lack of finality as one ground for denying judicial relief until such a process has been complete. Of course this rule and doctrine favors the preliminary administrative sifting process, for obvious reasons, before the courts are appealed to. An oft quoted statement of the Supreme Court of the United States is that such a rule is enforced to prevent attempts "to swamp the courts by a resort to them in the first instance". *United States* v. *Sing Tuck,* 194 U. S. 161, 24 S. Ct. 621, 624, 48

L. Ed. 917. It seems reasonable under ordinary circumstances that clearly the administrative processes open for one should be exhausted before the courts enter into the picture, because ordinarily men in administering that position can be and should be presumed to do the correct thing and if given a full chance to fully pass upon the matter they will determine it correctly. There too is a line of cases where the courts have intervened and taken cognizance of the question without the party having exhausted the administrative remedies but these cases ordinarily are cases which turn upon the absolute futility of exhausting such administrative remedies. A case in point is *Oklahoma Public Welfare Comm.* v. *State ex rel. Thompson*, 187 Okl. 654, 105 P. (2d) 547, 130 A. L. R. 873. In a few words this is the reason that the relator, appellant, gives for not having exhausted his administrative remedies in the instant case, because he says that it would be futile to do so. The mere fact though that administrative authorities will probably deny relief which would be asked of them is no ground for asserting that it is futile to resort to the administrative agency. *Abelleira* v. *District Court*, 17 Cal. (2d) 280, 295, 109 P. (2d) 942, 132 A. L. R. 715.

Unquestionably the relator, appellant, was a classified employee of the City of Nashville under its charter and the rules promulgated by the Civil Service Commission of that City. The authority of the Civil Service Commission to promulgate these rules concerning lay-offs and other matters as contained in Section 204 of the Charter which among other things says:

"(g) To adopt rules for the administration of the civil service and pension provisions of this Charter."

Then above we have quoted a portion of the following Section (205) which sets forth that they may adopt rules and amendments, etc., and their force.

It seems from a study of the Charter that the administrative remedy afforded the relator, (appellant) is contained in the document "Rules respecting Lay-Offs, Civil Service Commission, adopted 7-16-51", above referred to and quoted from. Section 11 thereof, which we have quoted gives all the employees of the classified service who might be laid off the right within thirty days to appeal to the Civil Service Commission and have their cases reviewed. This appellant did not do this but first sought, some two years after he was laid off, to regain his position by the writ of mandamus applied for herein. We of course must presume that if he had exhausted his remedies and appealed to the Civil Service Commission that he could have sifted out, argued out and showed to this Commission where his rights had been violated. The City could have in turn answered as to whether or not he was entitled to be laid off. It seems that they should first have had the right to determine the matter. He could there present evidence as to his Civil Service status. Thus a record could be made up. If this action did not do justice to the petitioner he could have then appealed to the courts.

We have a State Statute, Code, Sec. 9018.1 which provides in effect that no court of record in this State shall entertain any proceeding involving the Civil Service status of a County or City employee when such proceeding is in the nature of an appeal from the ruling of the City or County official unless this official had first exhausted his rights to appeal to the Civil Service Commission and there made up his record. This statute was referred to in the recent case of *State ex rel. Paylor* v. *City of Knoxville*, 195 Tenn. 318, 259 S. W. (2d) 537. This case is likewise relied on herein by the relator but in our judgment it can

clearly be distinguished. In the Paylor case, supra, there was no showing or no claim made that Paylor was entitled to any administrative remedy or that he had failed to resort to any if he had any. The question there has no relation to the one here under consideration.

It is very ably and forcefully contended by the relator (appellant) that: (1) that there was no lawfully appointed Director of Finance for the City of Nashville; (2) that without such a lawfully appointed Director of Finance that no one in this department could be effectively laid off and no one could give notice insofar as this relator was concerned of such a lay-off; and (3) that since the Mayor, having never appointed a Director of Finance that any pro-tem appointee or person acting as such had no authority to lay-off or give any such notice of lay-off; and lastly that none of these things having been done the Director of Personnel had no authority or right to give this notice on behalf of the Civil Service Commission. It seems to us that under the provisions and orders of the Civil Service Commission hereinbefore quoted providing lay-off rules, etc., that all of these things and matters should have been brought before the Civil Service Commission by this relator appealing to them and that since he did not appeal to them so that these matters could be sifted out that we should not interfere.

The relator cites and relies upon the recent well considered case of *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. (2d) 747, 754. We do not think that case or the question there considered is in point here at all. It is true that the court there held that the Carters might resort to mandamus without exhausting their administrative remedies but this was because it was shown that the resorting to such remedies was futile and useless. The Court saying:

"The only permit for which the petitioners made application was a certificate of occupancy or zoning permit which, under the ordinance, must be obtained before any building permit may be issued. As the zoning permit requested by the petitioners was denied by the city manager in the first instance and refused on appeal by the board of adjustment, it is obvious that so long as that status continued, any application by the petitioners to the board of directors of the city for a building permit would necessarily have been rejected."

This statement is the heart of the reason of why mandamus was permitted there. The Court in its opinion recognizes fully the force of our holding herein that administrative remedy must be exhausted in the first instance unless it is shown that some such situation as developed in the West Virginia case is shown to the court.

We have enjoyed working on this lawsuit; it has been well presented both in oral argument and brief. But for reasons hereinbefore stated the opinion below must be affirmed.