IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2002 Session

## MICHAEL G. CANTRELL v. WALKER DIE CASTING, INC., EMPLOYEE BENEFIT PLAN, ET AL.

**Direct Appeal from the Chancery Court for Marshall County**
**No. 9942      F. Lee Russell, Judge**

_____

**No. M2001-00693-COA-R3-CV - Filed February 7, 2003**
_____

This case involves a denial of medical benefits for injuries sustained in an automobile accident. The Appellee was covered under an employee benefit plan which falls within the purview of the Employee Retirement Income Security Act of 1974 (ERISA). The trial court granted summary judgment for the Appellee as to the Appellant's liability for payment of the expenses resulting from the accident. We reverse the decision of the trial court, finding Appellee's failure to exhaust his administrative remedies prior to filing suit fatal to his cause.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and PATRICIA J. COTTRELL, J., joined.

Thomas A. Davidson, Lewisburg, Tennessee, for the appellant, Walker Die Casting, Inc., Employee Benefit Plan.

John H. Norton, III, Shelbyville Tennessee, for the appellee, Michael G. Cantrell.

Robert O. Binkley, Lewisburg, Tennessee, for the Intervenor/Appellee, Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Medical Center.

### OPINION

This case arises out of an automobile accident in which Michael Cantrell (Appellee) was injured. The accident occurred shortly after midnight on October 21, 1995. There was apparently evidence that Appellee had consumed alcohol prior to the accident. Appellee suffered serious injuries as a result of the accident. The treatment of these injuries resulted in substantial medical expenses. At the time of the accident Appellee was an employee of Walker Die Casting, Inc., and his medical care was covered under Walker's Employee Benefit Plan ("the Plan").

As a result of the accident, Appellee was charged with vehicular assault, reckless driving and DUI, first offense. The vehicular assault and DUI charges were "retired," June 3, 1996. Appellee entered a plea of ***nolo contendre*** to the reckless driving charge on the same day.

Appellant denied coverage for Appellee's medical expenses based on the language of the Plan, contained in the Employee Booklet[1], under the heading "general limitations," that provides:

No medical care benefits will be paid by this Plan:

6. For treatment or expenses incurred for an accident, injury or illness resulting from the voluntary use of prescription drugs, non-prescription drugs or alcohol which the use of same constitutes or contributes to the violation of any state or federal law. It will be determined by the Plan that violation of a state or federal law has occurred if:

a) the individual is convicted or found guilty of the applicable charges; or

b) there is sufficient evidence that a state or federal law has been violated and no charges were brought against the individual. Sufficient evidence is defined as but not limited to: (1) blood alcohol levels which exceed established state or federal minimums, (2) the possession of illegal non-prescription drugs, or (3) prescription/legend drugs used or taken without a written prescription.

Appellee contends that the clear wording of the plan does not exclude coverage under the facts of this case as Appellee was charged with, but not found guilty, or convicted of, an alcohol related offense. The parties also dispute whether Appellee ever received written explanations of the Plan's denial of coverage.

Appellee brought suit against his employer, Walker Die Casting, Inc., and the Plan's supervisor, American Group Administrator's, Inc. claiming that the employer was contractually liable for his medical costs based on the aforementioned provisions of the Plan's booklet. Although the Plan provides for administrative review of benefit denials, Appellee did not seek this administrative remedy prior to filing suit. The parties dispute whether, under the provisions of the Plan, resort to such remedies was required.

Initially, none of the parties involved realized that the Appellee's action was a claim falling within the purview of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., and that the proper defendant was the Plan itself. Subsequent to this realization the Appellee was allowed to amend his complaint leaving the Plan as the lone Defendant.

---

[1] It is unclear whether the Employee Booklet was entered as a trial exhibit. The language of the plan is, however, quoted by both parties in various pleadings to an extent sufficient for us to reach our decision.

Appellee moved for summary judgment as to the Plan's liability, based on the aforementioned language contained in the Employee Booklet. The trial court, in granting summary judgment for Appellee on the issue of Appellant's liability, found that, under its interpretation of the language of the plan, the administrator had arbitrarily denied the Appellee's claims. The court further found that the permissive language of the Plan excused Appellee's failure to exhaust the administrative remedies available to him prior to filing suit.

A hearing was held on August 17, 2001, on the damages aspect of Appellee's claim against Appellant at which Appellee was awarded $63,911.37 plus attorney's fees. This appeal followed.

Further discussion of the extensive procedural history of this case, comprising a technical record of three hundred and thirty five pages, does not bear repeating as it is well known to the parties.

## *Issues*

Appellant has raised eight (8) issues on appeal. Our decision relating to the following single issue, however, pretermits discussion of the remaining seven. That single dispositive issue is:

Did the Trial Court err in ruling that Appellee was not required to exhaust his administrative remedies before filing suit in Chancery Court?

## *Preemption of State Law*

"It is well-settled that ERISA preempts state law claims that 'relate to' an ERISA employee benefit plan." *Shackelford v. Cont'l Cas. Co.*, 96 F. Supp. 2d 738, 741 (M.D. Tenn. 2000). Although not initially realized by either party, and arguably still not fully recognized by Appellee, "[t]he common law cause of action urged by [Appellee in his initial complaint] *relates to* his employee benefit plan, and falls within ERISA's express preemption clause." *James v. Provident Nat'l Assurance Co.*, 865 S.W.2d 23, 24 (Tenn. Ct. App. 1993) (emphasis added). ERISA "preempts all state laws relating to any employee benefit plan covered by ERISA." *Campbell v. Precision Rubber Prods. Corp.*, 737 S.W.2d 283, 285 (Tenn. Ct. App. 1987) (citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983). "ERISA's broad preemption provision makes it clear that Congress intended to establish employee benefit plan regulation as an exclusive federal concern with federal law to apply exclusively, even where ERISA itself furnishes no answer." *In re: White Farm Equip. Co.*, 788 F.2d 1186, 1191 (6th Cir. 1986). Accordingly, we shall look to federal law in deciding the matter before us.

## *Standard of Review*

In the present case, the trial court granted Appellee's motion for summary judgment on the question of Appellant's liability for medical expenses incurred by Appellee as a result of his injuries occurring while covered under the Appellant's employee benefits plan. Appellant asserts that this grant of summary judgment was in error. In *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997), the Tennessee Supreme Court stated that

> [t]he standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tenn. R. Civ. P. 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Byrd*, 847 S.W.2d at 215.
>
> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the non moving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.*

*Bain v. Wells*, 936 S.W.2d at 622.

## *Exhaustion of Administrative Remedies*

Appellant asserts that Appellee's failure to exhaust his administrative remedies under the plan should have been fatal to his claim at the trial level, precluding a grant of summary judgment for the Appellee. Appellee counters with the assertion that the plans "permissive language" did not require him to exhaust such administrative remedies prior to filing suit. In its order granting summary judgment the trial court stated that

> [Appellant's] assertion that [Appellee's] claims should be barred by reason of his failure to exhaust administrative remedies is without merit. That, specifically, the Court finds that [the plan provision addressing administrative review] does not constitute an "administrative remedy" that <u>must</u> be followed by [Appellee] before legal action could be commenced. That, in other words, the Court finds that this provision is neither <u>mandatory</u> nor does it amount to an exclusive remedy that must have been availed by the [Appellee] prior to initiating legal proceedings.

It is true that "[p]ursuant to ERISA Section 502, a civil action may be brought by a participant or beneficiary 'to recover benefits due to him under the terms of his plan. . . .'" ***Parker v. Union Planters Corp.***, 203 F. Supp. 2d 888, 893 (W.D. Tenn. 2002). This right is tempered, however, by the fact that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit." ***Ravencraft v. UNUM Life Ins. Co. of Am.***, 212 F.3d 341, 343 (6th Cir. 2000). While ERISA "does not expressly require exhaustion of administrative remedies, federal case law has imposed this requirement upon claimants." ***Turner v. Reg'l Health Ctr. of Oak Ridge, Inc.***, No. 134, 1986 Tenn. App. LEXIS 3179, at *2-3 (Tenn. Ct. App. July 29, 1986) (citing ***Amato v. Bernard***, 618 F.2d 559 (9th Cir. 1980)).[2]

Appellee states in his brief that "while exhaustion of administrative remedies is normally required before filing a claim for benefits under an ERISA benefit plan, there are exceptions to this requirement." Appellee then goes on to state that "[o]ne such exception occurs when a plan administrator denies a claim but the provisions of ERISA relative to such a denial are not followed."[3] A thorough review of the record reveals that this exception was not addressed at the

---

[2]Tennessee has long favored the exhaustion of administrative remedies. ***See Jones v. City of Nashville***, 279 S.W.2d 267, 283 (Tenn. 1955), where, in discussing the exhaustion doctrine, our Tennessee Supreme Court opined that "this rule and doctrine favors the preliminary administrative sifting process, for obvious reasons, before the courts are appealed to[,]" and that "clearly the administrative processes open for one should be exhausted before the courts enter into the picture. . . ." ***Id.*** at 284.

[3]Traditional exhaustion principles also include an exception for instances "when resort to the administrative route is futile or the remedy inadequate." ***Amato***, 618 F.2d at 568. While Appellee does not expressly argue that either of these exceptions are applicable here, he does state that "it is clear from the acts and conduct of the Plan Administrator in arbitrarily and capriciously denying Plaintiff's claims in the first place. . . that requesting a review by the Plan Administrator of its actions would have been a useless act." Even if we construe this as an assertion that the futility exception should apply in this case, such a conclusory statement does not justify Appellee's failure to exhaust administrative remedies, for

> [t]he standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. ***See, e.g., Davis v. Featherstone***, 97 F.3d 734, 737 (4th Cir. 1996); ***Lindemann v. Mobil Oil Corp.***, 79 F.3d 647, 650 (7th Cir. 1996); ***Makar v. Health Care Corp. of Mid-Atlantic (Carefirst)***, 872 F.2d 80 (4th Cir. 1989); ***Fizer v. Safeway Stores, Inc.***, 586 F.2d 182 (10th Cir. 1978). A plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." ***Lindemann***, 79 F.3d at 650. ***See Communications Workers of Am. v. AT&T***, 309 U.S. App. D.C. 170, 40 F.3d 426 (D.C. Cir. 1994) ("The futility exception is . . . quite restricted and has

(continued...)

trial level, however, and "[i]t is well-settled that issues not raised at trial may not be raised for the first time on appeal." ***State Dep't of Human Servs. v. Defriece***, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). At the trial level, the only argument made by Appellee concerning the administrative procedures to be followed by Appellee were those addressing the permissive nature of the Plan provision at issue.[4] Our review of the record fails to disclose any mention of the adequacy of the Appellant's denials. As arguments not raised at trial are deemed waived on appeal, we refuse to now entertain Appellee's claims concerning the sufficiency of the denial provided him. ***See Devorak v. Patterson***, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995).

The question of the adequacy of the denials notwithstanding, Appellee insists that the permissive language contained within the Plan gave him the choice to either seek administrative remedies or, as he chose to do, forego them. Appellee's assertion, however, is invalid under established ERISA jurisprudence, the issue and effect of such permissive language having been squarely addressed by the Sixth Circuit Court of Appeals in the case of ***Baxter v. C.A. Muer Corp.***, 941 F.2d 451 (6th Cir. 1991).

In ***Baxter***, an employee "attended a party on [the employer's] premises, became intoxicated, and had an automobile accident while driving home." ***Id.*** at 452. As in the present case, "[a]n application to [the employer's] employee health benefit plan for reimbursement of the resultant medical expenses was denied."[5] ***Id.*** After an unsuccessful attempt to gain relief in state court, the employee brought an ERISA action in federal district court. ***Id.*** The district court granted summary judgment for the defendants based on an amendment to the Plan which precluded recovery by the employee. ***Id.*** at 453. In addition, the district court "[a]s an alternative holding, . . . ruled that [the employee] had failed to exhaust the appeal procedures prescribed in the plan and that such exhaustion was a prerequisite to suit." ***Id.*** On appeal to the sixth circuit court of appeals, the employee argued that "[the employer] did not provide him with a written denial of benefits, that the plan does not make the appeal process mandatory, that he did not retain a lawyer until after the appeal time had passed, and that requiring exhaustion of

---

[3] (...continued)
been applied only when resort to administrative remedies is clearly useless.") (quotations and citations omitted).

***Fallick v. Nationwide Mut. Ins. Co.***, 162 F.3d 410, 419 (6th Cir. 1998).

[4] Appellee also claims that he did not receive notice of the denials by the Plan administrator. This contention, however, is without merit as the initial complaint notes that the catalyst for the underlying lawsuit was the receipt of such denials.

[5] The denial was apparently based on a Plan amendment that "imposed primary liability for medical expenses arising from injuries sustained in automobile accidents on insurers issuing the no-fault insurance policies . . . drivers [were] required by state law to carry." A plan beneficiary who failed to carry such insurance was precluded from recovering for medical expenses under the plan. Baxter failed to maintain such no-fault coverage. ***Baxter***, 941 F.2d 451 at 452.

administrative remedies under ERISA plans is discretionary." ***Id.*** at 454. In addressing the employee's contentions, the ***Baxter*** court stated the following:

> We are not persuaded that the district court abused its discretion in requiring exhaustion of administrative remedies here. Whether or not [the employer] issued a written denial of benefits, [the employee] admits that he was notified that his claim was denied and that he could have sought administrative review of this denial. ***The fact that permissive language was used in framing the administrative review provision makes no difference***. ***See Mason v. Cont'l Group, Inc.***, 763 F.2d 1219, 1226 (11th Cir. 1985), ***cert. denied***, 474 U.S. 1087, 88 L. Ed. 2d 902, 106 S. Ct. 863 (1986), where the court rejected an argument that use of permissive language meant that the claimant was not required to avail himself of the review process before filing a federal suit. Finally, the fact that [the employee] did not retain a lawyer promptly does not relieve him of the exhaustion requirement. [The employee] admits both that he knew his request for medical benefits had been denied and that he had received a copy of the . . . plan outlining the review procedure. He could have pursued the review procedure without the assistance of a lawyer.

***Id.*** (emphasis added). Thus, ***Baxter*** makes it clear that the permissive nature of the language of the Plan does not excuse Appellee's failure to exhaust his administrative remedies.

Moreover, Appellee asserts that he submitted his medical and medically related expenses to Appellant "on or about August 14, 1996, and within the time allowable by the Employee Benefit Plan." Appellee goes on to state that "he has now received notice from these Defendants that his request for payment of the aforesaid medical and medically-related expenses has been denied, allegedly based on paragraph 6 of the General Limitations portion of the Employee Benefit Plan." Appellee's own exhibit in support of his initial complaint clearly shows, however, that Appellee was aware of the denial of benefits as early as April 3, 1996, when he received a bill for services related to the accident in question which clearly states that "[y]our insurance company has notified us that these services are not covered under your policy." A similar letter was received from another service provider on May 14, 1996, which included an "attached denial" from the plan administrator which clearly states that "the plan does not provide benefits for this type of illness/injury - see the general limitations of your employee booklet for further explanation." From these exhibits it is clear that Appellee was on notice of the denial of his claims well before he submitted his medical and medically related expenses to Appellant.[6]

---

[6]While the trial court questioned Appellant concerning what specific information the denial contained, the sufficiency of the notice provided Appellee was not raised by Appellee at the trial level. We, therefore, decline to rule on the sufficiency of the notice received by Appellee. These exhibits make it clear, however, that Appellee was aware of the denial of his claims irrespective of the propriety of such notice.

The Employee Benefit Plan, which Appellee obviously possessed at the time of filing the complaint[7], provides that "[i]f denial of a claim is received, the employee may request a review by filing a written request with the Plan Administrator within sixty (60) days of the date the employee received the denial."[8] Appellee, although having received notice of denial via the aforementioned bills, failed to meet this deadline. Accordingly, as in *Baxter*, "[Appellee] admits both that he knew his request for medical benefits had been denied and that he had received a copy of the . . . plan outlining the review procedure. He [too] could have pursued the review procedure without the assistance of a lawyer." *Baxter*, 941 F.2d 451 at 454.

Appellee further contends that another section of the Plan gives him the right to seek a judicial remedy without exhausting his administrative remedies. The Plan provision which Appellee refers to states that "[i]f you are improperly denied a benefit in full or in part, you have a right to file suit in a federal or state court." To accept Appellee's argument that this provision negates the requirement that an employee exhaust his administrative remedies would totally defeat the announced purpose behind the requirement and eviscerate the federal case law requiring such exhaustion of remedies.[9] The purpose underlying the exhaustion requirement was discussed in *Baxter*, where the court stated:

> In *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991), we noted that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80 (4th Cir. 1989), is to the same effect. The *Makar* court explained that although ERISA does not explicitly require exhaustion, ERISA does require benefit plans to provide internal dispute resolution procedures–and
>
> > Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement. ***It would be 'anomalous' if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized. Id*. at 83.**

---

[7] Appellee quotes directly from the Plan in his complaint.

[8] This portion of the Plan is quoted in Appellee's response to Appellant's motion for summary judgment, filed November 3, 1998.

[9] As of 1998, "due to ERISA's provision for the administrative review of benefits, ten federal circuits [had] read an exhaustion of administrative remedies requirement into the statute." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998).

***Baxter***, 941 F.2d 451 at 453 (emphasis added). In short, to allow an employee "[t]o make every claim into a federal [or state] case would undermine the claim procedure contemplated by the Act."[10] ***Costantino v. TRW, Inc.***, 13 F.3d 969, 974 (6th Cir. 1992) (citing ***Challenger v. Local Union No. 1 of Int'l Bridge***, 619 F.2d 645, 649 (7th Cir. 1980)).

### *Conclusion*

For the foregoing reasons, we reverse the trial court's grant of summary judgment to the Appellee. In addition, we dismiss the Appellee's claim, with prejudice, for failure to exhaust his administrative remedies. The cost of this appeal is taxed to the Appellee, Michael G. Cantrell.

_____
DAVID R. FARMER, JUDGE

---

[10]Appellee, in support of his argument that exhaustion should not be required, cites the unpublished opinion of ***Clark v. Metropolitan Life Ins. Co.***, No. 94-3840, 1995 U.S. App. LEXIS 35940, at *1 (6th Cir. Oct. 5, 1995). ***Clark*** construes certain language within the plan as giving the employee the option, once his claim is denied, to seek a judicial remedy without first resorting to the administrative remedies provided for in the Plan. For the reasons announced in this opinion, we find that the holding of ***Baxter***, a published opinion, that administrative remedies must be exhausted prior to seeking a judicial remedy, is the more sound decision as it better effectuates the goals of ERISA and comports with Tennessee's strong preference for exhaustion of such remedies. Accordingly, we choose to follow that line of federal case law requiring the exhaustion of administrative remedies absent clear futility or inadequacy of the remedy such administrative channels provide.