# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### September 22, 2004 Session

## TIERANY REDMOND v. CLETIDUS MARQUELL HUNT

**Direct Appeal from the Juvenile Court for Shelby County**
**No. N6957     Kenneth Turner, Judge**

---

**No. W2004-00127-COA-R3-JV - Filed December 10, 2004**

---

This is a child support action.  The trial court awarded Mother retroactive child support, set base child support, and ordered Father to make monthly payments into educational and future child support trust funds.  The trial court also ordered father to pay private elementary and high school tuition, provide health insurance, and maintain life insurance.  The trial court awarded Mother's reasonable attorney's fees.  We affirm as modified and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed as Modified and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., joined.  HOLLY M. KIRBY, J., filed a dissenting opinion.

Robert F. Miller and Paul C. Peel, Memphis, Tennessee for the Appellant, Cletidus Marquell Hunt.

Aubrey L. Brown, Jr., Memphis, Tennessee, for the Appellee, Tierany Redmond.

## OPINION

The underlying facts of this child support action are undisputed.  Tierany Redmond ("Mother") and Cletidus Marquell Hunt ("Father") are the unmarried parents of a minor child, T.L., born March 1998.  Father and Mother had a brief sexual relationship while Father was in college. Mother testified that she and Father did not "date," and that she was also having a sexual relationship with another man.  She testified that, at the time of T.L.'s birth, she did not know who T.L.'s father was.

In 1999, Father completed college and entered into a six-year, multi-million dollar contract to play professional football for the Green Bay Packers.  Mother works part-time at a salary of approximately $14,000 per year and has another minor child from another relationship.  She receives no child support from this child's Father, nor has she sought support.  T.L. has been in Mother's

exclusive custody since birth. They have resided in the homes of relatives and have received welfare benefits and food stamps.

Mother testified that Father contacted her upon learning of T.L.'s birth from friends. In 2000, the parties voluntarily participated in DNA testing which confirmed parentage. Father has no additional children.

Mother filed a petition for support in the Juvenile Court for Shelby County in March 2003. In her petition, Mother sought prospective child support and support retroactive to 1998; health insurance for T.L. and payment of one-half of medical expenses not reimbursed by insurance; and attorney's fees. In his answer, Father asserted he did not know of T.L.'s birth until early 2000. Father admitted a duty of support and proposed child support of $2,100 per month. Father agreed to provide health insurance for T.L. or to reimburse Mother for the cost of health insurance.

The trial court heard the matter on July 9, 2003. By order of October 21, 2003, the trial court confirmed and adopted the recommendations of the Referee as the decree of the court. It awarded Mother back child support based on 21% of Father's net income for March 1998 to July 2002, and based on 21% of Father's net income up to $10,000 per month for July 2002 through August 2003. The court set prospective base child support at $2,100 per month. The trial court further ordered Father to pay $5,000 per month into a future child support trust fund and $5,000 per month into an educational trust fund; ordered Father to pay for private elementary and high school expenses; ordered Father to provide health insurance and pay one-half of expenses not covered by insurance; and ordered Father to maintain life insurance for the duration of his child support obligation. The trial court also awarded Mother attorney's fees of $15,000. Father filed a timely notice of appeal to this Court.

### Issues Presented

Father presents the following issues, as we re-state them, for review by this Court:

(1)     Whether the trial court erred in determining the amount of retroactive child support;

(2)     Whether the trial court erred in awarding and determining the amount of educational trust fund payments and future child support trust fund payments;

(3)     Whether the trial court erred in ordering Father to provide private grade and high school education for the minor child.

Mother presents the following additional issues:

(1)     Whether the trial court erred in setting prospective child support;

(2)     Whether the trial court erred in failing to award interest on the award of retroactive child support;

(3)     Whether the trial court erred in failing to award all of Mother's attorney's fees and costs;

(4)     Whether Mother is entitled to attorney's fees on appeal.

### Standard of Review

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). We presume the trial court's findings on questions of fact to be correct, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review the trial court's conclusions on matters of law, however, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### Retroactive Child Support

The trial court awarded Mother child support retroactive to March 1998. The trial court held that Father's child support obligation should be 21% of Father's net income from March 1998 to July 2002, and 21% of Father's income up to $10,000 per month from July 2002 to August 2003. The trial court determined that Father's income during the related period was: $0 in 1998; $492,946 in 1999; $321,965 in 2000; $264,689 in 2001; $721,818 in 2002; and approximately $3.2 million in 2003. After applying credits for amounts previously paid, the trial court ordered Father to pay a total of $219,670.50 to Mother in retroactive child support.[1] It ordered Father to pay $165,000 directly to Mother within 30 days, and the remaining $54,670.59 into a trust.

We begin our analysis with the rebuttable presumption that the child support guidelines set forth the correct amount of child support. This presumption applies to awards of retroactive child support as well as to prospective child support awards. *State ex rel. Anderson v. Taylor*, No. M2001-02193-COA-R3-CV, 2003 WL 21480087, at *4 (Tenn. Ct. App. June 27, 2003) (*no perm. app. filed*). Tennessee Code Annotated § 36-5-101

> requires that there must be a rebuttable presumption in all child support cases that the amount of child support determined by an application of these guidelines is the correct amount to be awarded unless the court makes a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case. . . . The rubuttable presumption must be applied to *all* child support

---

[1] It is unclear how the trial court determined this sum. However, Father does not dispute the trial court's mathematical calculation. Rather, Father asserts the trial court erred by applying the child support guidelines in effect prior to 2002 to determine the amount of Father's retroactive child support obligation.

awards even if the order is being sought for a retroactive period before October 13, 1989.

Tenn. Comp. R. & Regs. 1240-2-4-.01(2)(emphasis added). Thus, although the trial court may, in its discretion, deviate from the guidelines when determining retroactive child support, this discretion is narrow and must be exercised within the constraints and limitations of the guidelines. *State ex rel. Anderson* v. *Taylor*, 2003 WL 21480087, at *5 (citing *State ex rel. Stewart v. Lockett*, No. M2001-00809-COA-R3-DC, 2002 Tenn. App. LEXIS 66, at *8 (Tenn. Ct. App. Jan. 30, 2000)(*no perm. app. filed*); *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000)); *but see Hickman v. Willis*, No. M2003-00574-COA-R3-JV, 2003 WL 22019110, at * 4 (Tenn. Ct. App. Aug. 27, 2003)(*no perm. app. filed*). Further, if the court determines a deviation from the guidelines is warranted in consideration of the best interests of the child(ren) or the equity between the parties, it must make "a written finding that the application of the child support guidelines would be unjust or inappropriate[.]" Tenn. Comp. R. & Regs. 1240-2-4-.01(3). The court abuses its discretion when it deviates from the guidelines without making written findings based on the evidence. *Taylor*, 2003 WL 21480087, at *4.

The provisions of the child support guidelines specifically applicable to high-income obligors were amended between the time T.L. was born in 1998 and the date of the July 2003 hearing. Prior to July 2002, in situations where the net income of the obligor parent exceeded $10,000 per month, the court had the discretion to consider a downward deviation from the guidelines if the *obligor* parent demonstrated a deviation was reasonable and in the best interest of the child in light of the circumstances. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(1997). Thus, had Father been ordered to pay child support at the time of T.L.'s birth in 1998, child support would have been set at 21% of Father's net income unless Father had carried the burden of demonstrating that a downward deviation from the guidelines was reasonable in light of the circumstances. The child support guidelines were amended in 2001, however, and the guidelines in effect since July 2002 provide that, where the net income of the obligor parent exceeds $10,000 per month, the *custodial* parent must prove by a preponderance of the evidence that child support based on income amounts in excess of $10,000 per month is reasonably necessary to provide for the needs of the minor child(ren). Tenn. Code Ann. § 36-5-101(e)(1)(B)(2001); Tenn. Comp. R. & Regs. 1240-2-4-.04(3). Thus, prior to 2002, the presumptive child support amount was calculated as a percentage of the obligor's net income unless the obligor demonstrated a downward deviation was warranted. Subsequent to July 2002, however, the presumptive amount in cases of high-income obligors has been the appropriate percentage of $10,000 unless the custodial parent demonstrates an upward deviation is warranted.

The burden of proof falls upon the parent seeking a deviation from the guidelines. The determinative question here is whether the pre-July 2002 guidelines or the post-July 2002 are applicable. Father does not argue that the trial court erred by awarding retroactive child support or that the trial court should not have awarded retroactive child support based on the child support guidelines. Rather, Father asserts that the trial court should have applied the guidelines in effect at the time of the July 2003 hearing, and that Mother failed to demonstrate that amounts in excess of $2,100 per month were necessary to support T.L. from the time of her birth in 1998. Mother, on the

-4-

other hand, argues that to apply the amended guidelines, which became effective in July 2002, would amount to a retroactive application of law.

The trial court generally will apply the statute in effect at the time of the hearing. *Connell v. Connell*, No. 03A01-9808-CV-00282, 2000 WL 122204, at *3 (Tenn. Ct. App. Jan. 25, 2000)(*no. perm. app. filed*)(holding: trial court properly applied provisions of Tennessee Code Annotated § 36-6-108 which went into effect one day before hearing). Further, the question of who bears the burden of proof is primarily determined by procedural rules. Thus, it is primarily a procedural matter. *See Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993); *Pulaski Highway Exp., Inc. v. Terminal Transp. Co.*, 493 S.W.2d 103, 108 (Tenn. Ct. App. 1972).

In light of the foregoing, the trial court properly should have applied the provisions of Tennessee Code Annotated § 36-5-101(e)(1)(B) and Tennessee Rules & Regulations 1240-2-4-.04(3) which were in effect at the time of the July 2003 hearing. Thus, the burden of proof was on Mother to demonstrate that support in excess of the percentage based on a net income of $10,000 per month was reasonably necessary to provide for the needs of T.L. The trial court made no findings concerning this matter and there is nothing in the record to demonstrate that an upward deviation from the guidelines was warranted for base child support. Accordingly, we affirm the award of retroactive child support, but modify the award to $2,100 per month for the period commencing with T.L.'s birth through August 2003, less credits for amounts previously paid by Father. This amount is to be paid directly to Mother.

### *Prospective Child Support*

The trial court determined Mother failed to establish that child support in excess of the guideline amount was reasonably necessary to provide for the needs of T.L. Accordingly, it set prospective base child support at 21% of $10,000 per month, or $2,100 per month, as provided by the guidelines. On appeal, Mother asserts that Father is more than able to provide child support well above the guideline amounts and that T.L. should enjoy a standard of living commensurate to Father's.

We are not insensitive to the considerable income disparity between these parents, or to the fact that Father enjoys a life style considerably more comfortable than that of Mother or T.L. However, the trial court made no written findings establishing that child support in excess of $2,100 per month is reasonably necessary to provide for the needs of T.L. and, having reviewed the record, we find no evidentiary basis which would support an upward deviation from the guidelines. Mother has failed to carry her burden of demonstrating that an upward deviation from the guidelines is warranted for the purposes of base child support in this case. We affirm.

### *Educational Trust Fund*

The trial court ordered Father to pay $5,000 per month into an educational trust for T.L. We note, as an initial matter, that Mother did not request an educational trust in her petition for support

or during the hearing of this matter. However, Father does not assert the trial court erred by establishing an educational trust fund for T.L., and has voluntarily agreed to provide a University of Tennessee education for T.L. At oral argument before this Court, Father stated that he would be willing to purchase a University of Tennessee education for T.L. "today." Father contends, however, that the trial court erred by ordering him to pay $5,000 per month into an educational trust until T.L. reaches the age of majority, or 150 months, which would result in an educational trust of $750,000, plus interest. We agree.

When determining whether to grant a request for a deviation, the trial court shall make a written finding that child support in excess of the amount based on income in excess of $10,000 per month is or is not reasonably necessary to provide for the needs of child(ren). Tenn. Code Ann. § 36-5-101(e)(1)(B)(2001); Tenn. Comp. R. & Regs. 1240-2-4-.04(3). The court may require that sums paid above the percentage applied to income in excess of $10,000 per month be placed in an educational or other trust fund and must make a written finding in the order supporting the basis for such an order. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(f).

Because Father has voluntarily agreed to provide a college education for T.L., it is not necessary for this Court to address the propriety of the establishment of the trust itself. Parents may agree to provide for their children above amounts required by law. *See, e.g., Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn.1975); *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App.1990). However, we agree with Father that the court has failed to provide any basis for the amount of the trust.

In light of Father's voluntary agreement to provide T.L. with a University of Tennessee education, we affirm the creation of an educational trust. We modify, however, the trial court's order that Father pay $5,000 per month into the trust for the duration of his child support obligation. An educational trust far in excess of what would be necessary to fund even an expensive education is neither just nor required by the guidelines. *Whiton v. Whiton*, No. E2000-00467-COA-R3-CV, 2002 WL 1585630, at * 11 (Tenn. Ct. App. July 18, 2002) *rev'd on other grounds* (Tenn. 2003). In consideration of Father's voluntary offer to immediately purchase a University of Tennessee education for T.L., Father shall immediately fund the trust with an amount equal to the projected cost of a University of Tennessee undergraduate education, including tuition and fees, books and supplies, room and board, living expenses and incidentals, for the period when T.L. is expected to be of college age. This will provide a post-high school education for T.L. while not limiting her to the University of Tennessee. If T.L. fails to enroll in college or a technical/vocational school by the time she is 21-years of age, or if she ceases to attend class for a period of over one year, any unused portion of the fund will revert to Father.[2] We remand for determination of this amount.

---

[2]This reversion provision was proposed by Mother at trial.

### *Private School Education*

At the hearing of this matter, Mother indicated that she would prefer a private school education for T.L. Father asserts there is no evidence in the record to demonstrate that a private school is warranted for T.L. Mother argues that an upward deviation to pay for private school is supported by the guidelines and case law.

The guidelines provide, as a criteria for deviation from the guidelines, that "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage[.]" Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(c). Certainly, Tennessee case law supports an upward deviation to pay for private education where the obligor parent has the means to provide such and it is warranted under the circumstances. *See, e.g., Barnett v. Barnett*, 27 S.W.3d 904 (Tenn. 2000). Father's argument in this case, frankly summarized, is that if public school education was good enough for him, it is good enough for T.L.

It might be said that few children *need* private school education in the absence of a disability or a special need, particularly where the child historically has not attended private school. However, the guidelines clearly state that the "percentage amounts are minimums" and that "the court shall increase the award" to provide for "extraordinary educational expenses." Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(c). The guidelines further provide that in deviating from the minimums required by the guidelines, "primary consideration must be given to the best interest of the child(ren) for whom support under these guidelines are being utilized in the case before the court." Tenn. Comp. R. & Regs. 1240-2-4-.04(5).

The trial court determined that T.L. should be afforded the opportunity to attend a private school. In light of the equities in this case, we cannot say the court abused its discretion when it ordered Father to provide private school education for T.L. Certainly, this deviation is within the constraints of the guidelines and supported by case law. Additionally, in light of the equities between the parties, it works no hardship on Father. We affirm on this issue.

### *Future Child Support Trust Fund*

In addition to requiring Father to purchase life insurance to secure his child support obligation, the trial court ordered Father to pay $5,000 per month into a trust fund to secure his child support obligation at the present amount in the event Father is injured, retires, or is otherwise unable to meet his child support obligation. Father argues that this trust fund, which, if paid until T.L. reaches the age of majority, will amount to approximately twice his entire child support obligation, is not supported by the guidelines. He further argues that his situation is not different than that of any obligor parent - all of whom may lose a job, become injured, or face changed circumstance. Mother argues that the trust fund is supported by Tenn. Comp. R. & Regs. 1240-2-4-.04(3), *Nash v. Mulle*, 846 S.W.2d 803 (Tenn. 1993), and *Lee v. Askew*, No 02A01-9805-JV-00133, 1999 WL 142389 (Tenn. Ct. App. 1999) *perm. app. denied* (Tenn. 1999).

We being our analysis of this issue by noting that the trust funds at issue in the cases cited by Mother were established to provide for the children's college educations. In *Lee v. Askew*, the trial court's original order provided that the trust would be "available for extraordinary expenses of the minor child during his minority, and for college expenses if necessary thereafter. Furthermore, these funds would be available for use as monthly child support in the event that the respondent's future income should diminish to a point that it is necessary to invade this fund." *Lee v. Askew*, No 02A01-9805-JV-00133, 1999 Tenn. App. LEXIS 290, at *2 (Tenn. Ct. App. Apr. 30, 1999). On appeal, in our order on the appellant's petition to rehear, however, this Court held:

> The income will be expended solely for the child's college expenses and will be subject to close and reasonable scrutiny . . . . We concur with the express intent of the trial court, that the funds in the trust be maintained for the purpose of providing for the child's college education. Should exigencies occur which might require an invasion of the fund, such as extraordinary expenses of the minor child or a decrease in the appellee's income, the appellee may petition the . . . court for a specific finding of need and justification for any invasion of the corpus.

*Id.* at *3-4. Thus, the trust fund established in *Lee v. Askew* was expressly intended to be an educational trust. However, we did not rule out invasion of the trust for extraordinary exigencies or upon a decrease in the obligor's income where such invasion was justified by specific findings of the court.

In the case now before us, an educational trust fund has been separately established and the trust at issue has been established for the sole purpose of securing Father's future child support obligation. Additionally, the trust is not necessary to secure Father's obligation in case of Father's death - the trial court ordered Father to maintain of life insurance policy for this purpose (which Father does not appeal). Rather, it anticipates only Father's inability to pay child support at the current amount in case of a decrease in income.

In *Huntley v. Huntley*, this Court affirmed the trial court's determination that a portion of the obligor's child support obligation should be placed in a non-educational trust. *Huntley v. Huntley*, 61 S.W.3d 329, 338 (Tenn. Ct. App. 2001). In *Huntley*, however, the sums directed into trust were not funds above the guideline amounts (then 21% of obligor's net income for one child). Rather, the *Huntley* court determined that the obligor had not carried his burden of proving a downward deviation from the guidelines was necessary, but ordered that his child support obligation be split between direct payments to the custodial parent and into a non-educational trust. *Id.* The *Huntley* court opined:

> We agree that the duration and purpose of the Trust is atypical but also find that there is no prohibition against this type of Trust. When the obligor has a net monthly income in excess of $10,000, as Defendant does, the Guidelines allow funds to be placed "in an educational *or other trust* fund for the benefit of the child."

*Id.* (citing Tenn. Comp. R. & Regs. 1240-2-4-.04(3))(emphasis in the original). Thus, the *Huntley* court ordered payments exceeding those based on an income of $10,000 per month to be paid into trust.

The present case is distinguishable from *Huntley*, which was decided before the amendment to the guidelines with respect to high-income obligors become effective. In *Huntley*, the court did not deviate from the guidelines, but simply placed a portion of obligor's child support obligation into a trust fund. In the present case, the trial court implicitly has deviated from the guidelines, imposing on Father a $5,000 per month child support obligation in excess of the guideline amount, to provide for T.L.'s needs in the case of Father's potential income reduction.

The regulations provide:

> The court may require that sums paid above the percentage applied to the net income above Ten Thousand Dollars ($10,000) per month be placed in and educational *or other trust fund* for the benefit of the child and shall make a written finding in the order supporting the basis for such an order.

Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(f)(emphasis added). Clearly, the regulations permit trusts other than educational trusts in situations where the obligor is a high-income obligor and the trial court has made findings supporting the need for such a trust. Although the regulations do not specifically provide that a trust may be established solely to secure future child support payments, neither do they proscribe such trusts where they are supported by the circumstances. Additionally, *Lee* and *Huntley* support the proposition that trusts may be established for non-educational purposes, and *Lee* supports the proposition that trusts may, upon specific findings of the court, be utilized to provide child support upon a decrease in the obligor's income.

In this case, as in *Lee*, where the obligor parent was a professional basketball player, both Father's income and risk of loss of employment through injury or "early retirement" may be described as ultra-high. We recognize that, as Father asserts, it is possible that any high-income obligor, indeed, any obligor, will suffer an injury or income reduction. However, under the facts of this case, we believe the establishment of a future child support trust is warranted. Father's standard of living likely will remain high in light of his substantial current income notwithstanding a decrease in future income; Father's profession as a professional football player unquestionably presents a high risk of injury; such injury likely would result in an end to Father's current career and in a loss of future income; and T.L. unquestionably will need future child support to meet even basic needs. Moreover, the trust presents no financial burden to Father, and any amounts remaining in the trust will revert to Father upon T.L.'s reaching the age of majority.

We agree with Father, however, that the trial court's order that Father pay $5,000 per month into a future child support trust for an unspecified length of time (presumably for the duration of Father's child support obligation) is not appropriate. Such payment would result in a trust that far

exceeds Father's total child support obligation. We accordingly modify the trial court's order and order Father to pay $5,000 per month into the future child support trust until such time as the amount in the trust equals the amount of Father's remaining child support obligation. We remand for a determination of this payment period. Additionally, in light of the trial court's order that Father maintain life insurance to secure his child support obligation in the case of his death, we order that any amounts remaining in the trust in the event of Father's death before T.L. reaches the age of majority will revert to Father's estate upon receipt of life insurance benefits by Mother.

### *Interest*

Mother asserts the trial court erred by failing to award interest on the award of retroactive child support. The code provides, in pertinent part:

> If the full amount of child support is not paid by the date upon which the ordered support is due, the unpaid amount is in arrears and shall become a judgment for the unpaid amounts and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum. All interest which accumulates on arrearages shall be considered child support.

Tenn. Code Ann. § 36-5-101(a)(5)(2001). Mother's argument, as we perceive it, is that, upon the trial court's award of retroactive child support, she become entitled to 12% interest per annum on the child support amounts payable for each year.

In his reply brief, Father asserts Mother waived this issue by failing to raise it in the trial court. A party may not raise an issue for the first time upon appeal. *Cantrell v. Walker Die Casting, Inc.*, 121 S.W.3d 391, 396 (Tenn. Ct. App. 2003). Upon review of the record, we find the issue of interest was not raised in the trial court and, therefore, has been waived. We accordingly decline to address the merits of this issue.

### *Attorney's Fees and Costs*

Mother contends the trial erred by failing to award her all of her attorney's fees and litigation expenses incurred in preparing and prosecuting her child support petition. She asserts these costs amounted to $24,575.05, and that Father did not object to the reasonableness of this sum. The trial court awarded Mother $15,000 "as that just portion of Petitioner's (Mother's) attorney fees and litigation expenses." Father does not argue that the trial court erred in awarding Mother's attorney's fees. Father asserts the amount of attorney's fees requested by Mother is unreasonable and that the trial court did not abuse its discretion in determining the amount of Mother's reasonable attorney's fees.

An award of reasonable attorney's fees is appropriate when the services of a parent's attorney inures to the benefit of a minor child. *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993). We review an award of attorney's fees under an abuse of discretion standard. *Id.* Upon review of

the record, we note that as of July 7, 2003, Mother's attorney's fees and expenses were $12,155.59. Additionally fees of $1,973.50 were incurred on July 8 and 9 in conjunction with the hearing of this matter on July 9. The remainder of the $24,575.05 submitted by Mother's counsel was incurred post-trial. We cannot say the trial court abused its discretion in awarding Mother attorney's fees of $15,000.

### *Attorney's Fees on Appeal*

Mother requests attorneys fees on appeal. This court repeatedly has recognized that when the obligor parent appeals an award of child support, "[t]he allowance of attorney's fees for [an appeal] is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf." *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001)(quoting *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993)). We award Mother reasonable attorney's fees incurred on appeal. We remand to the trial court for determination of the amount of such reasonable fees.

### *Conclusion*

The dissent would hold that an upward deviation from the child support guidelines is warranted in this case for both retroactive and prospective child support. Like the dissent, we are not insensitive to the disparate financial circumstances of the parties in this case. Clearly, Father enjoys a life-style far more lavish than that of Mother. However, the trial court's award of retroactive child support was based on an erroneous application of law and not a finding of need in excess of the guideline amounts. Retroactive child support awards recognize that a parent's duty of support begins with the birth of the child, and the child support guidelines provide a presumptive measure of the award amount. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000). Mother failed to demonstrate expenses exceeding the amount of child support required by the guidelines, and no amount of retroactive support can alter the conditions under which T.L. previously lived. The award of retroactive child support mandated by this Opinion is the statutory amount; it will enable Mother to achieve her stated goal of purchasing a home in a more affluent area; and it will compensate her for expenses incurred on T.L.'s behalf.

The dissent further points to Father's lack of visitation as warranting an upward deviation from the guidelines. In providing criteria for deviation, the guidelines state,

> (b) If the child(ren) is/are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening to Sunday evening, two weeks during the summer and two weeks during holiday periods throughout the year, then an amount shall be added to the percentage calculated in the above rule to compensate the obligee for the cost of providing care for the child(ren) for the amount of time during the average visitation period that the child(ren) is/are not with the obligor [reference 1240-2-4-.02(6)]. The court may consider a downward

deviation from the guidelines if the obligor demonstrates that he/she is consistently providing more care and supervision for the children than contemplated in the rule.

Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(b). It is not disputed that, in this case, Father has spent very little visitation time with T.L. However, the issue here becomes how this provision is to be applied in light of section 36-5-101(e)(1)(B)(2001) and Tenn. Comp. R. & Regs. 1240-2-4-.04(3). In resolving apparent conflicts between the statutes, the courts must seek to provide for "a harmonious operation of the laws." *Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 883 (Tenn.1996) (quoting *Boone v. Sundquist*, 884 S.W.2d 438, 444 (Tenn. 1994)). In this case, although the guidelines clearly permit and provide the basis for an upward deviation based on reduced visitation, the trial court found that base child support in excess of the guideline presumptive amount of $2100 per month was not necessary despite the undisputed fact of reduced visitation. The trial court determined, however, that a deviation was warranted insofar as necessary to provide for private school education, an educational trust, and a future support trust. The evidence does not preponderate against the trial court's findings.

In light of the foregoing, this matter is affirmed as modified. We remand to the trial court for modifications consistent with this Opinion. Costs of this appeal are taxed one-half to Tierany Redmond, Appellee and one-half to Cletidus Marquell Hunt, Appellant, and his surety, for which execution may issue if necessary.

 

_____
DAVID R. FARMER, JUDGE